Brent CAREY and Stacy Carey,
Appellants–Plaintiffs,

v.

INDIANA PHYSICAL THERAPY,
INC., and Stephen Connelly, P.T.,
Appellees–Defendants.

No. 02A03–0910–CV–473.

Court of Appeals of Indiana.

May 28, 2010.

---

Dennis R. Brown, Dennis H. Geisleman, Geisleman & Brown, LLP, Fort Wayne, IN, Attorneys for Appellants.

Edward L. Murphy, Michael A. Barranda, Nathaniel O. Hubley, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

MAY, Judge.

Brent Carey sued his physical therapist for malpractice arising out of his treatment after an auto accident. The trial court granted summary judgment for the therapist, and we affirm because Carey did not designate evidence the therapy was a proximate cause of his injury.[1]

### FACTS AND PROCEDURAL HISTORY

Carey was injured in an automobile accident, for which he received settlement monies from the original tortfeasor.[2] Due to his injuries, his doctor referred him to Stephen Connelly, a physical therapist at Indiana Physical Therapy, Inc. According to Carey, at his third session, Connelly did "compressions": "He laid his chest across my arms and ... used his body to put force on my arms and push." (App. at 124.) Carey claimed Connelly stopped only when Carey "broke out in tears and

---

1. We heard oral argument on April 27, 2010 in Indianapolis. We commend both counsel on the quality of their oral advocacy.

2. The record before us does not contain a copy, or elucidate the terms, of that settlement agreement.

screamed out in pain" after Carey "felt something pop." (*Id.*)

Connelly denied that sequence of events happened and specifically denied that Carey indicated during the therapy session that he felt pain. Connelly was asked whether the manipulation Carey described would have been appropriate, and he replied "no, it would not." (*Id.* at 150.)

At some point Carey was diagnosed with reflex sympathetic dystrophy (RSD). His medical expert testified normal physical therapy would not likely contribute to RSD, and noted that after the therapy sessions Carey experienced "new symptoms, or symptoms got worse with that— with that therapy." (*Id.* at 163.)

The trial court concluded Carey had not designated expert testimony on the standard of care or on proximate cause and Carey's injuries might have been caused by the "original tortfeasor from whom [Carey] received settlement monies which operate to compensate and fully satisfy [Carey]." [3] (*Id.* at 30.) Based thereon, it granted summary judgment for Connelly.

## DISCUSSION AND DECISION

■ The standard of review of a summary judgment is the same as that used in the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lean v. Reed,* 876 N.E.2d 1104, 1107 (Ind. 2007). In determining whether summary judgment is appropriate, we construe all facts and reasonable inferences in favor of the nonmoving party. *Jackson v. Scheible,* 902 N.E.2d 807, 809 (Ind.2009). Our review is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 973 (Ind.2001). We must carefully review a decision on summary judgment to ensure a party is not improperly denied its day in court. *Id.* at 974. We affirm summary judgment on any legal basis supported by the designated evidence. *Cincinnati Ins. Co. v. Davis,* 860 N.E.2d 915, 922 (Ind.Ct.App.2007). The appellant bears the burden of persuading us summary judgment was erroneous. *Id.*

■ To maintain a claim of medical malpractice,[4] a plaintiff must show (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty by allowing conduct to fall below a set standard of care, and (3) a compensable injury proximately caused by defendant's breach of the duty. *Whyde v. Czarkowski,* 659 N.E.2d 625, 627 (Ind.Ct. App.1995), *trans. denied.*

■ The trial court correctly found Carey did not designate evidence that created a genuine issue of fact as to whether the physical therapy was the cause of Carey's injury. Generally, the traditional standard of proximate cause applies in medical malpractice actions in Indiana. *Dughaish ex rel. Dughaish v. Cobb,* 729 N.E.2d 159, 164 (Ind.Ct.App.2000), *trans. denied* 753 N.E.2d 2 (Ind.2001). To determine whether an act is a proximate cause

3. As we affirm on the ground there was no evidence of proximate cause, we need not address the other two bases for the summary judgment. *See Gates v. Riley ex rel. Riley,* 723 N.E.2d 946, 950 (Ind.Ct.App.2000) (to prevail in his summary judgment motion, a defendant need only demonstrate that the undisputed facts negate at least one element of the plaintiff's case), *trans. denied* 735 N.E.2d 233 (Ind. 2000).

4. This medical malpractice case was not submitted to a medical review panel because Connelly is not a "qualified health care provider" under the medical malpractice act. Ind.Code § 34–18–2–24.5. If a health care provider is not "qualified" under the act, the provider is subject to liability without regard to the provisions of the act and the patient's remedy is not affected by the act. Ind.Code § 34–18–3–1.

of another's injury under the traditional standard of causation, we consider whether the injury was a natural and probable consequence of the negligent act, which, in the light of the attending circumstances, could have been reasonably foreseen or anticipated. *Id.* Thus, to be considered a proximate cause, the negligent act must have set in motion a chain of circumstances that in natural and continuous sequence lead to the resulting injury. *Id.* Proximate cause requires, at a minimum, that the harm would not have occurred but for the defendant's conduct. *Hamilton v. Ashton,* 846 N.E.2d 309, 316 (Ind.Ct.App.2006), *clarified on reh'g on other grounds* 850 N.E.2d 466, *trans. denied* 860 N.E.2d 592 (Ind. 2006). The defendant's act need not be the sole cause of the plaintiff's injuries; it needs to be only one of the proximate causes rather than a remote cause. *Id.* While proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the designated facts. *Id.*

As evidence Connelly's manipulation was a proximate cause of his injury, Carey offered testimony by Dr. Jody Neer, a neurologist who cared for Carey after the physical therapy treatment. When asked "what event or events caused or contributed to Mr. Carey's RSD," Dr. Neer testified:

> [W]hat started everything, was the accident he was in.... The treatment at the physical therapy office, I'm not sure what that involved.... But I do know that with at least one of those treatments, he had new symptoms, or symp-

toms got worse with that—with that therapy.... So I don't know if I can say with certainty whether he would not have developed RSD without physical therapy manipulation.... Yeah, the physical therapy, it seems like that something changed with the physical therapy, but I don't know with certainty whether that has caused his chronic condition.

(App. at 163.) The doctor described the physical therapy and the accident as "intertwined" causes. (*Id.* at 164.) The doctor was asked whether Carey would have developed RSD had the alleged physical therapy incident not happened, and he replied "it is very uncommon to report the development of reflex sympathetic dystrophy after a whiplash injury or a cervical strain." [5] (*Id.*)

The trial court found "Dr. Neer is unable to determine whether Carey's reflex sympathetic dystrophy resulted only from the [prior automobile] accident or physical therapy," and that Carey conceded the "injuries are intertwined." (*Id.* at 25.) It concluded Carey had failed to "designate sufficient expert testimony that the Defendants' alleged negligence is the proximate cause of Plaintiffs' injuries." (*Id.* at 29.)

Dr. Neer's testimony does not provide a causal link between Connelly's alleged negligence and Carey's RSD.[6] In *Malooley v. McIntyre,* 597 N.E.2d 314, 318 (Ind.Ct. App.1992), we determined McIntyre's estate did not provide evidence Dr. Malooley's actions caused her death. Two members of the medical review panel said there was not causation, but a third member, Dr.

---

**5.** This appears to be a reference to the injuries sustained in the automobile accident.

**6.** Carey asserts the trial court improperly required him to provide evidence the physical therapy was the only cause of his injury. We agree that such a requirement conflicts with Indiana law as stated in *Hamilton. See* 846

N.E.2d at 316 (many causes may produce the injurious result; the essential question is whether the defendant's wrongful act is one of the proximate causes rather than a remote cause). However, as Carey presented no evidence the therapy was "a" proximate cause, any possible error was harmless.

Shapiro, concluded he was unable to determine whether causation existed. That, the estate argued, "place[d] the issue of causation in controversy." *Id.* We disagreed:

> Dr. Shapiro's opinion is not evidence which tends to support the Estate's allegation that there was a causative nexus between conduct and death. . . . [I]t was incumbent upon the Estate to bring forth facts as to the actual existence of causation. Dr. Shapiro's conclusion in fact could be used to support the contention that the Estate could not find an affirmative proponent as to proximate cause.

*Id.* at 318. We determined the panel's opinion, including that of the third member, "logically supports only two arguments: 1) that there was no causation, or 2) that causation could not be determined. Dr. Shapiro's opinion lends no support whatsoever to the argument that there was causation." *Id.*

Similarly, Dr. Neer's testimony did not show the necessary "causative nexus" in the form of "facts as to the actual existence of causation." *Id.* He did not explicitly opine that causation could not be determined, but he stated he did not know what the physical therapy involved, he could not say with certainty that Carey would not have developed RSD without physical therapy manipulation, and that "something changed with the physical therapy, but I don't know with certainty whether that has caused his chronic condition." (App. at 163.) This testimony was insufficient to establish a factual issue as to proximate cause. As Connelly negated that element of Carey's negligence claim, summary judgment for Connelly was not error.

Affirmed.

BRADFORD, J., and BROWN, J., concur.