# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**STEVEN D. MCCORMICK**
**JONATHAN C. BUNGE**
**DOUGLAS G. SMITH**
Kirkland & Ellis, LLP
Chicago, Illinois

**ANDREW W. HULL**
**DANIEL K. BURKE**
Hoover Hull LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**L. ALAN WHALEY**
**MICHAEL A. WUKMER**
**MELANIE A. HARRIS**
**JENNY R. BUCHHEIT**
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) | |
| | ) | |
| Appellant -- Cross-Appellee, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1301-PL-49 |
| | ) | |
| ACS HUMAN SERVICES, LLC, | ) | |
| | ) | |
| Appellee -- Cross-Appellant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-1005-PL-21451

**November 26, 2013**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

International Business Machines Corp. ("IBM") and the State of Indiana ("the State") filed lawsuits against one another related to the State's Family and Social Services Administration ("FSSA") modernization initiatives. The trial court ordered IBM to pay $709,398.95 in costs related to discovery and production of documents incurred by a non-party, ACS Human Services, LLC ("ACS"). Later, the trial court imposed sanctions totaling $425,178.85 against ACS in favor of IBM.

IBM and ACS each appeal. IBM seeks vacation of the costs assessed against it in favor of ACS. ACS cross-appeals, seeking an increase in the costs assessed against IBM and vacation of the sanctions assessed against it in favor of IBM.

We affirm.

**Issues**

IBM presents several issues, which we restate as:

    I.    Whether the trial court abused its discretion when it ordered IBM to pay costs associated with third-party discovery to ACS, because:

        A.  ACS, though not joined as a party in the litigation, was so central to the litigation with interests so closely connected to those of the State as to not be entitled to payment of costs related to third-party participation in discovery; and

        B.  The court's determination of the amount of costs awarded was not supported by sufficient evidence in the record.

ACS presents several issues in its cross-appeal, which we restate as:

    II.    Whether the trial court abused its discretion when it awarded ACS less than its total claimed costs; and

III. Whether the trial court abused its discretion when it assessed sanctions against ACS in favor of IBM because

    A. IBM waived its right to seek sanctions by failing to timely pursue sanctions before the trial court;

    B. The Indiana Trial Rules do not permit an award of discovery sanctions against a non-party in ACS's position;

    C. ACS did not engage in sanctionable conduct; and

    D. The sanctions awarded to IBM were not supported by sufficient evidence in the record.

**Facts and Procedural History**

This appeal arises from the State's engagement of IBM and numerous subcontractors, including ACS, to modernize the process used to determine eligibility for social services ("the Modernization Project"). ACS had been closely involved with the State's prior social services eligibility systems, and was retained as a subcontractor to IBM, which the State engaged as a primary contractor for developing and implementing a more automated process for receiving and resolving applications for social services.

After problems occurred in the development and deployment of the work product of the Modernization Project, on May 13, 2010, the State and IBM each filed suit against one another in Marion Superior Court No. 10. ACS was not named as a party in either case. The two causes were consolidated on May 14, 2010; ACS remained a non-party to the suit.

On March 15, 2011, IBM sent to ACS a subpoena duces tecum, seeking production of documents on a number of subject matters related to the suits filed by the State and IBM against one another. The requests encompassed not only physical documents, but electronically stored information ("ESI"). The subpoena included the following statement:

3

You are entitled to security against damages or payment of damages resulting from these requests for production and may respond to any request by submitting to its terms, by proposing different terms, by objecting specifically or generally to any request by serving a written response to the Requesting Party [here, IBM] within thirty (30) days, or by moving to quash as permitted by Rule 45(B) of the Indiana Rules of Trial Procedure.

(Appellant's App'x at 2337.) The letter IBM enclosed with the subpoena provided that "ACS may limit its search of e-mail … at this time" to a list of ten custodians and limited document production to certain subject matters. (Appellant's 2d App'x at 2578.) However, IBM indicated that it might make "more targeted requests" on those subject matters "in the future." (Appellant's 2d App'x at 2578.)

On May 13, 2011, the trial court entered several closing dates for various aspects of the discovery process. The earliest of these, August 1, 2011, was to conclude the "fact discovery" process. (Appellant's App'x at 90.) The latest of these was November 10, 2011, which provided a final date for completing depositions of expert witnesses.

On July 19, 2011, the trial court set the case for a four-week bench trial to commence on February 27, 2012.

Over the course of the litigation, IBM filed motions to compel production from ACS on May 27, 2011, October 20, 2011, and January 31, 2012; several of these, including January 31, 2012's emergency motion to compel production of documents and witnesses, were granted by the trial court. On January 18, 2012, ACS sought and was denied certification of a discretionary interlocutory appeal of one of the orders. In addition, from December 19, 2011 through March 1, 2012, the trial court closely supervised ACS's participation in the discovery process, describing the task as having had to "ride herd" over

4

the discovery process as it related to ACS. (Appellant's App'x at 480.)

During a hearing on February 3, 2012, the trial court recognized that ACS was "bending over backwards to try to accommodate" IBM, (Appellant's App'x at 465) and observed that ACS was "at the mercy of whoever these people [ACS's document management vendor] are in Texas," (Appellant's App'x at 459) but also stated that "ACS probably does need[] to work as hard as everybody else is working." (Appellant's App'x at 465.) Further, the court warned ACS of the possibility of sanctions if it failed to act diligently upon discovery requests.

A six-week bench trial was conducted and concluded in late April 2012.[1] Production of documents was ongoing throughout the trial. On February 29, 2012, IBM filed a motion to compel discovery, which the trial court granted.

After the conclusion of the bench trial, on July 18, 2012, the trial court issued seventy-three pages of findings of fact and conclusions of law, and entered judgment in favor of IBM on the merits of the underlying case.

On August 23, 2012, ACS filed a motion seeking an award of costs and attorneys' fees associated with its response to IBM's subpoena of March 15, 2011. ACS's motion for costs sought reimbursement of expenses totaling $355,328.95 associated with the loading and management of documents into a database provided by a third-party e-discovery software vendor, $1,222,112.45 for the work of outside counsel to review and redact documents for

---

[1] The Chronological Case Summary ("CCS") for this matter does not specify when the bench trial was commenced, concluded, or on what dates testimony was heard. Because IBM and ACS agree on when events occurred vis-à-vis the beginning and end of the trial, these lacunae in the CCS have not affected our review.

5

production, and $94,042.60 for the work of counsel to oppose IBM's motions to compel production. Thus, ACS requested a total of $1,671,484.00 in damages from IBM, and in addition sought payment of costs incurred in calculating and establishing the amount of the damages. (Appellant's App'x at 2325.)

On October 22, 2012, the trial court granted in part and denied in part ACS's motion for costs. The court granted ACS's costs with respect to the work of its e-discovery vendor, awarding ACS $355,328.95.[2] The court also granted ACS's costs related to the work of a dedicated document review team, which ACS had fixed at $708,140.00, but reduced this amount by half in light of ACS's "largely unexplained" delay in producing documents and based upon principles of "general equity." (Appellant's App'x at 158.) Thus, the trial court awarded ACS a total of $709,398.95 in damages related to its production of what the trial court recognized were an "extraordinary number of requested documents." (Appellant's App'x at 158.) The trial court denied all other costs for which ACS sought payment from IBM. In doing so, the court concluded that ACS was not entitled to the additional requested amounts due to ACS's dilatory conduct, its close relationship to the State through the various contractual arrangements associated with the Modernization Project, and its failure to demonstrate that it engaged in "reasonable resistance" to IBM's discovery requests as required by Indiana Trial Rule 34(C)(3). (Appellant's App'x at 159.)

Nearly one month later, on November 19, 2012, IBM moved for sanctions against

---

[2] In an apparent scrivener's error, the text of the court's order sets forth an amount of $335,328.95 for this portion of the award. However, the order provides for no diminution of ACS's requested amount of $355,328.95, and the total amount of damages the trial court awarded to ACS reflects a grant of the entirety of the $355,328.95 paid by ACS to its e-discovery software vendor.

ACS for its conduct during the discovery process. IBM's request sought a total of $891,956.17 in sanctions against ACS, claiming these were attributable to payment of attorneys' fees and lost efficiency in the discovery and trial process. (Appellant's App'x at 120.)

On February 28, 2013, the trial court granted IBM's motion for sanctions as to the payment of attorneys' fees, observing that "neither ACS nor the record show that the failures or delays producing discovery were substantially justified or that other circumstances make an award of fees unjust." (Appellee's App'x at 105.) Thus, the trial court awarded IBM sanctions totaling $425,178.85, but denied IBM's request for sanctions in all other respects. (Appellee's App'x at 105.)

An appeal was taken from the trial court's judgment on the merits of the underlying lawsuits. Subsequently, IBM appealed the trial court's award of damages to ACS; ACS cross-appealed, challenging both the amount awarded as damages in its favor against IBM and the court's entry of sanctions in favor of IBM. On January 17, 2013, this Court granted IBM's motion seeking separation of the instant appeal from an appeal of the trial court's entry of judgment in favor of IBM on the merits of the underlying lawsuits.

**Discussion and Decision**

Standard of Review

Both IBM's appeal and ACS's cross-appeal challenge certain of the trial court's discovery rulings. Trial courts exercise "broad discretion" in making discovery rulings. Vernon v. Kroger Co., 712 N.E.2d 976, 982 (Ind. 1999). Thus, "an appellate court will

7

interfere only when the appealing party can show an abuse of that discretion." Id. "'Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case.'" Id. (quoting McCullough v. Archbold Ladder Co., 605 N.E.2d 175, 180 (Ind. 1993)). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if it misinterprets the law. Id.

"Because of the fact-sensitive nature of discovery issues, a trial court's ruling is given a strong presumption of correctness." Smith v. Smith, 854 N.E.2d 1, 4 (Ind. Ct. App. 2006). This presumption extends as well to the trial court's determinations with respect to violations of discovery orders and attendant sanctions, which should not be overturned "[a]bsent clear error and resulting prejudice." Id. at 4 (citing, inter alia, Vernon, 712 N.E.2d at 982). We are, as ever, mindful that "[t]he purpose of the discovery rules is to allow for minimal trial court involvement and to promote liberal discovery." Whitaker v. Becker, 960 N.E.2d 111, 115 (Ind. 2012).

Award of Damages to ACS

We turn first to IBM's contention on appeal that the trial court abused its discretion when it awarded ACS damages to be paid by IBM as a result of ACS's costs incurred in the discovery process. This argument takes two forms. First, IBM argues that the trial court abused its discretion when it awarded damages to ACS as a non-party. Second, assuming there was no abuse of discretion associated with a finding that ACS was entitled to damages, IBM argues that the trial court's determination of the amount of damages was arbitrary and

8

thus must be reversed. In its cross-appeal, ACS argues that the trial court abused its discretion in setting damages by awarding too little of the costs submitted to the trial court.

*Whether ACS was Entitled to Damages Associated with Non-Party Discovery*

We turn first to IBM's argument that ACS was not entitled to treatment as a non-party for purposes of payment of costs and attorneys' fees associated with discovery.

Generally, discovery from a non-party is governed by Trial Rules 34 and 45. Rule 34 governs the production of documents and electronically stored information, including how to make requests for production, timelines for responses to requests, and the formats in which electronic information may be produced. T.R. 34(A) & (B). Rule 34(C) applies to the production of such information by "[a] witness or person other than a party." T.R. 34(C)(1). The rule also provides for the procedure by which a non-party from whom a party seeks discovery may oppose producing the requested information and receive security for and/or payment of damages for the costs associated with production:

> The request shall contain the matter provided in subsection (B) of this rule. It shall also state that the witness or person to whom it is directed is entitled to security against damages or payment of damages resulting from such request and may respond to such request by submitting to its terms, by proposing different terms, by objecting specifically or generally to the request by serving a written response to the party making the request within thirty (30) days, or by moving to quash as permitted by Rule 45(B). Any party, or any witness or person upon whom the request properly is made may respond to the request as provided in subsection (B) of this rule. If the response of the witness or person to whom it is directed is unfavorable, if he moves to quash, if he refuses to cooperate after responding or fails to respond, or if he objects, the party making the request may move for an order under Rule 37(A) with respect to any such response or objection. In granting an order under this subsection and Rule 37(A)(2) the court shall condition relief upon the prepayment of damages to be proximately incurred by the witness or person to whom the request is directed or require an adequate surety bond or other indemnity conditioned

against such damages. Such damages shall include reasonable attorneys' fees incurred in reasonable resistance and in establishing such threatened damage or damages.

T.R. 34(C)(3).

Looking to Rule 34, IBM contends that the trial court did not go far enough when it decided that ACS's participation in discovery was integral to adjudication of the issues in the underlying case between IBM and the State, because the trial court stopped short of concluding that ACS should be treated as a party for discovery purposes. IBM argues that ACS was for all intents and purposes as much a party to the litigation as the State, and thus is not entitled to the payment of damages under Rule 34(C). Further, IBM asserts that ACS's involvement in parallel litigation in federal court deprives them of any right to recover much of their costs for engaging in discovery in the litigation in Marion Superior Court between IBM and the State.

IBM contends that this Court's opinion in Brown v. Dobbs required the trial court to conclude that ACS was in a "symbiotic" relationship with the State so that ACS was, in effect, a party to the litigation and thus is not entitled to any compensation for involvement in discovery. 691 N.E.2d 907 (Ind. Ct. App. 1998). In Brown, Dobbs, the plaintiff, sought as discovery from Brown answers to interrogatories and production of documents from Brown's insurer, State Farm, and Biodynamics Research Corporation, a business that State Farm had retained to analyze the effect of collisions like those in Brown. Id. at 908. Brown sought a protective order, arguing that responding to Dobbs's discovery requests would be overly burdensome and not relevant to Dobbs's claims. Id. at 908-09. Dobbs's response to the

10

motion seeking a protective order included "excerpts from depositions with Biodynamics's employees describing the symbiotic relationship between State Farm and Biodynamics." Id. at 909. The trial court ultimately denied Brown's motion for a protective order as to Dobbs's discovery requests. Id. at 908.

> We affirmed the trial court, observing that the order denying Brown's motion
>
> [made it] apparent that the trial court determined that even though Brown was named as the defendant, State Farm was the actual party providing the defense. Accordingly, discovery directed to Brown was discovery directed to State Farm. It is also apparent that the trial court determined that State Farm and Biodynamics would effectively prevent Dobbs from obtaining needed information through conventional discovery. Accordingly, the trial court determined that it was necessary to place the onus and cost of producing materials upon State Farm and Biodynamics.

Id. at 909. Biodynamics, though also not a named party to the litigation, was so "symbiotic[ally]" connected to State Farm as to warrant that both State Farm and Biodynamics be required to participate in discovery as though they were named parties to the litigation. Id.

> Applying Brown in this case the trial court found:
>
> ACS and the State are contracted together in the same endeavor that is at issue here, although not necessarily for payment of costs like the insurer in Brown…. But it cannot be concluded that there is not an interdependent relationship that far exceeds the more typical non-party production scenario, nor that ACS is not integrally involved in the lawsuit and its outcome….
>
> On the other hand, the Court balances ACS's Trial Rule 34 entitlement, and its burden in producing the extraordinary number of requested documents.

(Appellant's App'x at 158.) That is, the trial court here found that though ACS and the State are far more closely connected than the typical party and non-party would be, that

11

relationship was not so close that ACS was actually providing the State's defense, nor would ACS be required to sustain the costs of defense and any damages assessed against the State as a result of the litigation, and thus ACS was entitled to treatment as a non-party—albeit a crucial one—for discovery purposes.

We cannot conclude that the trial court abused its discretion either as to the facts and circumstances before it or as to the correct interpretation of the law. First, we do not think that this Court's prior ruling in Brown amounts to a holding that relationships like that between ACS and the State are as a matter of law so symbiotic as to require treatment of such non-parties as parties to litigation in all cases.[3] This would be tantamount to inappropriately second-guessing the unique familiarity of trial courts with the specific facts of the cases before them.

Further, unlike the plaintiff in Brown, IBM has produced no evidence demonstrating that ACS was responsible financially for any of the State's costs of defense or liability. IBM, as the prime contractor on the Modernization Project, entered into an agreement with ACS separate from any agreement between ACS and the State. And while IBM advances as a basis for denial of ACS's motion for costs the State's representation to the trial court that it would have sought substantially the same discovery from ACS as IBM did, that the State would have had to specifically request discovery weighs in favor of concluding that ACS and the State were not so symbiotically connected as IBM argues; that is, the information was not

---

[3] While IBM seeks to apply Federal case law concerning the availability of reimbursement of costs to traditional disinterested non-parties who are ordered to engage in discovery, we note that the Federal Rules of Civil Procedure lack any rule with provisions governing third-party discovery and entitlement to security equivalent to those found in Indiana Trial Rule 34(C).

readily shared between ACS and the State. Finally, while IBM contends that ACS's involvement as a party in parallel litigation in Federal court concerning the Modernization Project should prevent a recovery for production of discovery in the lawsuit at issue here, IBM directs us to no evidence that would indicate so substantial an overlap in the necessary discovery as to require the trial court to reach IBM's desired conclusion on that point.

*Sufficiency of the Evidence for the Amount of Costs Awarded – IBM's Appeal*

Having found no abuse of discretion in the trial court's determination that ACS was entitled to damages as a non-party under Trial Rule 34, we turn now to IBM's contention that the trial court abused its discretion when it set the amount of damages to which ACS was entitled.

Trial Rule 34(C) provides that a non-party shall receive security against damages "to be proximately incurred by the witness or person to whom the request is directed." T.R. 34(C)(3). "Such damages shall include reasonable attorneys' fees incurred in reasonable resistance and in establishing such threatened damage or damages." Id.

The parties to this appeal do not direct this Court to any reported Indiana decisions interpreting the damages provisions of Trial Rule 34(C), and this Court has been unable to find any such decisions itself. However, given the nature of the damages awarded here—that is, damages awarded to reimburse a non-party's production of information during discovery—we apply the same discretionary review as in other discovery matters.

Here, IBM takes no issue with the trial court's finding that ACS's efforts to resist engaging in discovery were not "reasonable resistance," for which Trial Rule 34(C) provides

13

recovery of related attorneys' fees. However, IBM challenges the trial court's award of $355,328.95 for ACS's costs related to a third-party e-discovery vendor and $354,070.00 in attorneys' fees, all as damages incurred from the work of a document review team to review and produce discovery responsive to IBM's requests.[4] Specifically, IBM contends that the trial court's order lacked sufficient supportive evidence and that ACS would, in any event, have been required to incur the costs in associated litigation in Federal court.

First, we disagree with IBM's contentions concerning the sufficiency of the evidence supporting the trial court's determination of ACS's costs. IBM argues, complete with the use of "scare quotes,"[5] that the only "'support' ACS provided for its motion was a heavily-redacted and self-serving spreadsheet purporting to 'summarize' ACS's fees and costs." (Appellant's Br. at 17). IBM further argues that "many of the costs that ACS was awarded have no narrative" due to redaction, and points to 212 entries that are completely redacted. (Appellant's Br. at 17.) Yet our review of the evidence submitted in support of ACS's motion for costs reveals that ACS submitted numerous vendor invoices and more than one hundred pages of individual time entries for members of the document review team, with almost all such entries including a sentence-length or longer description of the work done. (Appellant's App'x at 2411-521.) And while IBM argues that ACS was not entitled to payment of costs associated with unnecessary redaction of records, separate litigation in

---

[4] As a result of the trial court's decision to reduce the total award for document review by half, the $354,070.00 in costs related to document review represents half of the total cost of $708,140.00 ACS incurred in document review efforts.

[5] The term, scare quotes, convey the idea that what is labeled in quotes is "'so-called-but-not-really.'" Bryan A. Garner, Legal Writing in Plain English: A Text with Exercises 157 (2001).

federal court, or errors incurred by ACS's third-party data provider, ACS was in fact awarded less than its total claimed costs. IBM does not indicate how there was clear error associated with the court's decision to award ACS some, but not all of its costs.

Simply put, we find no dearth of evidence from which the trial court could assess the costs and attorneys' fees imposed upon IBM. IBM's arguments would require us to reweigh evidence or second-guess the trial court's assessment of the evidence before it in light of the court's experience with the entire course of the litigation, and we decline to do so.

Sufficiency of the Evidence for the Amount of Costs Awarded – ACS's Cross-Appeal

We turn now to ACS's argument in its cross-appeal concerning the trial court's assessment of damages arising from discovery. ACS argues that the trial court abused its discretion by awarding too little compensation for its participation in discovery. Specifically, ACS contends that the trial court's determination of the costs associated with the document review team was correct, but that the court "then abused its discretion by applying a 50% reduction for inapplicable factors and 'general equity.'" (Appellee's Br. at 17.) The trial court, ACS contends, further erred by "summarily refusing to award the remainder of ACS's costs," including attorneys' fees incurred by outside counsel in opposing discovery, which ACS argues "are specifically contemplated by Rule 34." (Appellee's Br. at 17.)

We disagree.

While we have no prior case law directly interpreting the damages provisions of Trial Rule 34(C)(3), we observe that in all other cases, it is incumbent upon an individual seeking the payment of fees and costs to prove their entitlement to such an award. See, e.g., Nance v.

15

Miami Sand & Gravel, LLC, 825 N.E.2d 826, 838-39 (Ind. Ct. App. 2005) (seeking attorneys' fees and costs under I.C. § 34-24-3-1 after suffering a loss from conversion), trans. denied; Buschman v. ADS Corp., 782 N.E.2d 423, 431 (Ind. Ct. App. 2003) (reviewing a claim for attorneys' fees under I.C. § 34-52-1-1 for frivolous litigation, and stating that "[t]he party requiring assessment of attorney's fees has the burden of proof at trial"). A party that has unsuccessfully sought an award of fees is in the position of one appealing from a negative judgment, and we will not reverse such a judgment unless it is contrary to law. Buschman, 782 N.E.2d at 431.

Here, ACS failed to meet deadlines set by the trial court and resisted providing discovery that was ultimately determined to be necessary for the trial. The trial court issued numerous discovery orders pertaining to ACS. While ACS informed the trial court that it was making efforts to comply with discovery orders, the trial court was not persuaded by any of the proffered explanations for ACS's shortcomings. ACS does not contend that the trial court's rulings on those matters were incorrect—only that its resistance to IBM's discovery requests was reasonable, and that the court lacked discretion to award any amount other than what ACS submitted.

Trial Rule 34 requires a requesting party to provide security against damages "proximately incurred" by a non-party from whom discovery is sought. T.R. 34(C)(3). While we lack prior case law to decide this point, and the parties do not direct us to any cases interpreting this portion of the Trial Rule, we note that the rule uses language harkening to the concept of "proximate cause" in tort law. In that area of law, damages have their

16

proximate cause in an alleged breach of care when "the injury was a natural and probable consequence of the negligent act, which, in light of the attending circumstances, could have been reasonably foreseen or anticipated." Carey v. Ind. Physical Therapy, Inc., 926 N.E.2d 1126, 1129 (Ind. Ct. App. 2010), trans. denied. And, as in assessing proximate cause, it is plain that under Trial Rule 34(C)(3) some fact-finding is necessary to determine what damages were incurred in responding to a discovery request. See id. Moreover, we observe that equitable considerations are within the scope of the trial court's discretion in reaching decisions on discovery matters. Vernon, 712 N.E.2d at 982.

Thus, Trial Rule 34(C)(3) does not by its plain language require that the trial court order payment for all damages a non-party might incur. To hold as much, absent an express statement in the Rule requiring such a conclusion, would be to undermine the trial court's exercise of discretion in discovery matters. Thus, ACS was not as a matter of law entitled to full compensation of all its costs and fees by operation of Trial Rule 34(C) alone.

As to ACS's claim that the trial court should have awarded it all of its attorneys' fees incurred in resisting IBM's discovery requests, we note that the trial court ultimately denied very few of IBM's requests and, as IBM points out, the State indicated that it would have sought much the same discovery from ACS had IBM not pursued the discovery independently. While the trial court acknowledged the very large amount of information associated with ACS's discovery production—and the extent of the related costs—the court also expressed frustration that ACS did not explain delays and caused the court to "ride herd" over the discovery process as it pertained to ACS. (Appellant's App'x at 480.) We thus

17

cannot conclude the trial court abused its discretion when it declined to award ACS with compensation for its attorneys' fees in resisting IBM's discovery requests.

Nor can we conclude that the trial court abused its discretion when it reduced the total amount of costs ACS incurred related to document review and production. The trial court reviewed the invoices and time sheets ACS submitted in support of its motion for payment of costs by IBM. The court awarded ACS all of the costs it paid to a third-party e-discovery vendor, but out of considerations of "general equity" cut in half the remaining amount of fees and costs associated with document review and production. (Appellant's App'x at 158.) Equitable considerations fall within the scope of a trial court's discretion. Vernon, 712 N.E.2d at 982. And here, the trial court noted that much of the evidence concerning which ACS claimed privilege was not properly subject to such protection.

Under these circumstances, we cannot conclude that the trial court abused its discretion when it awarded attorneys' fees and costs less than the total amount sought in ACS's motion.

ACS's Cross-Appeal on Sanctions

We turn now to the other issue ACS raises on appeal, whether the trial court erred when it assessed discovery sanctions against it. ACS raises a number of arguments; we address each in turn.

*Whether Sanctions May Properly Have Been Imposed on ACS*

We turn first to a threshold matter, whether sanctions may properly have been imposed upon ACS as a non-party to the underlying litigation between IBM and the State.

IBM contends that ACS's interests and conduct were so closely aligned with the State that ACS is, effectively, a party to the litigation; we have already rejected this argument, supra. ACS contends that because it is a non-party, the provisions of Trial Rule 37 do not contemplate the imposition of sanctions against it, and thus the trial court abused its discretion by granting IBM's motion to assess discovery sanctions.

Trial Rule 37 provides, in relevant part, that "if a party or witness or other person, in response to a request submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order … compelling inspection in accordance with the request." T.R. 37(A)(2). "If the motion is granted, the court shall … require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in obtaining the order." T.R. 37(A)(4).

Further, sanctions for failure to comply may be ordered "[i]f a party or an officer, director, or managing agent of a party or an organization … fails to obey an order to provide or permit discovery, including an order made under subdivision (A) of this rule." T.R. 37(B)(2). Such sanctions may include, for parties, orders that preclude the introduction of evidence or limit the presentation of claims or defenses. T.R. 37(B)(2)(a) – (e). In lieu of such procedural sanctions, "the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." T.R. 37(B)(2)(e).

19

Discovery sanctions are imposed "'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" Whitaker, 960 N.E.2d at 115 (quoting Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976)). "[T]he regular practice is to fashion progressive sanctions … when it is possible to do so." Id. at 116.

ACS argues that Trial Rule 37(B)(2) does not include language that permits the imposition of sanctions against non-parties, and indeed claims that Trial Rule 37(A)(1) mentions non-parties only in the context of a non-party deponent. Thus, ACS claims, the Trial Rules did not permit the trial court to assess sanctions, and the court abused its discretion when it did so.

We do not agree. ACS's approach parses the language of Rule 37(B) too finely, and adopting that interpretation would undercut the purposes behind the imposition of discovery orders and sanctions: punishment and deterrence of noncompliance and compensation of damages incurred by a discovering party as a result of a compelled party's unjustified noncompliance with a discovery order.

First, as noted above, non-parties are mentioned in numerous places in Trial Rule 37, as in Trial Rule 37(A)(2), which refers to "a party or witness or other person," and Rule 37(B)(2), which refers to "a party or an officer, director, or managing agent of a party or an organization." T.R. 37(A)(2) & 37(B)(2) (emphasis added.) The discovery rules thus clearly contemplate their application—including the applicability of the provisions governing sanctions—to non-parties. And while, as we have noted, the usual practice is to impose

20

progressive sanctions, this applies only when possible; here, the sanctions contemplated by Trial Rule 37(B)(2)—except for a finding of contempt of court or the imposition of monetary sanctions—were unavailable to the trial court because those sanctions can be applied only to parties.

We note also that ACS argues that IBM could not seek sanctions based, in part, upon IBM's status as the prevailing party—that is, IBM did not establish prejudice as a result of any noncompliance with discovery on ACS's part. Yet the language of Trial Rule 37 uses the word "shall," that is, the rule requires the trial court to assess sanctions for disobedience unless the defying party's disobedience was substantially justified or sanctions would otherwise be unjust. T.R. 37(B)(2)(e); cf. Chapo v. Jefferson Cnty. Plan Comm'n, 926 N.E.2d 504, 508 (Ind. Ct. App. 2010) (noting that the use of "shall" in T.R. 41(E) deprives courts of discretion to act in a manner contrary to the rule).

The trial rules do not require the discovering party to have suffered substantial prejudice in order for sanctions to be assessed, and ACS identifies nothing in our trial rules or case law that establishes the proposition that discovery sanctions are unavailable to the prevailing party in underlying litigation. The trial court did not conclude that either ACS's resistance to or failure to comply with the discovery orders was substantially justified, and thus, based upon the plain language of Rule 37, the trial court was required to assess sanctions against ACS.

Finally, we cannot conclude, as ACS contends, that the absence of any specific provision allowing sanctions against a non-party for failure to comply with a discovery order

21

entirely precludes a trial court from assessing any penalties for noncompliance. For trial courts retain their capacity to assess sanctions in the form of findings of contempt of court where an individual or organization, party to litigation or not, acts contrary to court order, and Trial Rule 37(B)(2)(d) expressly provides for a finding of contempt of court where an individual or organization fails to comply with a discovery order.

On either basis—Trial Rule 37's provisions permitting sanctions against non-parties, or the inherent power of a court to enforce its orders—the trial court did not lack the authority to assess sanctions against ACS for failure to comply with discovery orders, and thus the trial court did not abuse its discretion in this respect.

*Timeliness of IBM's Motion*

ACS also contends that IBM's motion for sanctions was not timely, and thus the trial court erred in granting that motion and assessing sanctions against ACS. This argument takes two forms: one, that IBM failed to move for a continuance as a result of any failure on ACS's part to comply with the discovery orders, and thereby waived any right to sanctions; and, two, that IBM filed its motion for sanctions several months after the trial court entered judgment, and thus simply filed its motion too late for the trial court to properly grant relief.

In support of the first of these arguments, ACS points to IBM's failure to object at trial and seek a continuance in order to avoid prejudice from ACS's discovery violations, and relies on cases from this Court and our supreme court. See Farley Neighborhood Ass'n v. Town of Speedway, 765 N.E.2d 1226, 1231 (Ind. 2002) (holding as waived for appeal a claim of unfair surprise as to evidence first provided the night before trial, where there was

no objection to admission of the evidence at trial nor motion for continuance); Everage v. NIPSCO, 825 N.E.2d 941 (Ind. Ct. App. 2005) (concluding that Everage waived for appeal the exclusion from evidence of certain testimony, where Everage did not contemporaneously object and failed to request a continuance upon denial of his belated objection).

The concept of waiver of an issue for appeal is inapposite here. Discovery in the present case extended over a number of months, and ACS was ordered on several occasions—including three pre-trial orders and the trial court "riding herd" during the latter part of 2011 and the beginning of 2012—to participate in discovery throughout this period, but failed to fully comply. Thus, ACS's failure to comply with discovery orders extended over a period of time well in advance of trial, and IBM sought relief from the trial court by means of moving for discovery sanctions. With discovery dragging on throughout the course of the trial itself, IBM's decision not to immediately seek sanctions did not result in waiver.

Turning now to ACS's broader argument concerning the timeliness of IBM's motion, Trial Rule 37 does not impose an express time limit upon a party's decision to seek discovery sanctions; thus, whether a request for sanctions is timely is left to the discretion of the trial court. Pointing to federal case law, ACS argues that sanctions cannot be sought after judgment is entered on the merits of a case.

While our courts may, in the absence of Indiana cases interpreting our trial rules, turn to federal case law interpreting the Federal Rules of Civil Procedure, we need not do so when there is instructive Indiana case law. See Ealy v. State, 685 N.E.2d 1047, 1051 (Ind. 1997) (noting that "in the absence of our own case law … we may be informed by looking to

federal case law"). Here, our supreme court's holding in <u>Witt v. Jay Petroleum, Inc.</u>, 964 N.E.2d 198 (Ind. 2012), is instructive on the question ACS raises concerning the timeliness of the trial court's imposition of discovery sanctions. In <u>Witt</u>, the trial court imposed a temporary restraining order that required all work to cease on property Witt owned, pending further discovery proceedings. <u>Id.</u> at 201. More than a year later, the trial court found Witt, his attorney, and an environmental remediation contractor Witt had hired in contempt of court after they took actions that the trial court held violated the restraining order. <u>Id.</u> at 202. The trial court subsequently imposed more than $100,000.00 in sanctions upon Witt and his agents. <u>Id.</u> On transfer, our supreme court held that there was no abuse of discretion when the trial court imposed sanctions for contempt of court upon Witt and his agents, and reaffirmed that such orders are reviewed for an abuse of discretion, even after a special judge had been appointed to the case and more than a year had passed since the violation of the court order. <u>Id.</u> at 204.

Guided by our supreme court's holding in <u>Witt</u>, we find no abuse of discretion associated with the timing of IBM's motion and the trial court's decision, several months after the conclusion of the trial in this case, to impose sanctions against ACS.

*Whether ACS's Conduct was Sanctionable*

We turn now to ACS's argument that its conduct was not sanctionable and that the trial court's decision to the contrary was an abuse of discretion. Some of ACS's argument in this regard points to various facets of discovery that occurred near to or during trial as a result of new requests from IBM. ACS also points to its submission of verified reports about the

24

progress of ACS's document production, contends that the reports were creditable explanations for delay, and argues that the trial court abused its discretion when it concluded otherwise.

While aspects of document production and discovery continued during the bench trial in this case, the court did not award IBM all of the sanctions it sought. It thus appears to us that the trial court took into account some of the issues in controversy when it determined the sanctions it imposed upon ACS. Our review of the verified status reports ACS submitted to the trial court did not reveal explanation for delays in production except as to a handful of document custodians.

IBM filed multiple motions to compel ACS to produce documents, the trial court found that ACS's opposition was not reasonable,[6] and the trial court intervened numerous times in the discovery process to secure ACS's compliance. ACS does not directly challenge any of these rulings, and to the extent ACS's argument seeks a reweighing of the evidence or otherwise asks that we second-guess the trial court's judgment, we decline to do so. We therefore cannot conclude that the trial court abused its discretion when it found that ACS's conduct was sanctionable.

*Whether the Trial Court Abused its Discretion in Setting the Amount of Sanctions*

We turn now to ACS's last contention in its cross-appeal, that the amount of the sanctions the trial court awarded to IBM was not reasonable in light of the evidence, and therefore the trial court abused its discretion when it awarded IBM sanctions against ACS in

---

[6] We have already rejected ACS's argument that its opposition was reasonable. See supra.

the amount of $425,178.85.

Trial Rule 37(A)(4) provides that, where a motion to compel discovery or a motion seeking a protective order is granted, "the court shall, after opportunity for hearing, require" the non-prevailing party to the motion "to pay … the reasonable expenses incurred … including attorneys' fees" unless the trial court finds that moving or opposing the motion "was substantially justified or that other circumstances make an award of expenses unjust." Failure to comply with a discovery order may also result in the assessment of monetary sanctions "to pay the reasonable expenses, including attorney's fees, caused by the failure" unless the trial court finds that failure to comply was substantially justified or that assessment of sanctions would be unjust based upon other circumstances. T.R. 34(B)(2)(e). Moreover, a trial court has authority to impose payment of attorney's fees and other costs associated with proving that an individual's conduct amounts to contempt of court, "and we will reverse an award of damages only if there is no evidence to support the award." City of Gary v. Major, 822 N.E.2d 165, 172 (Ind. 2005).

As IBM did in its appeal, ACS points to the large number of time entries IBM submitted in support of its motion for sanctions and contests the amount of the award the trial court granted in favor of IBM. Also as IBM did, ACS singles out specific time records that it contends bear no relationship to ACS's opposition to IBM's motions or to any failure on ACS's part to comply with the trial court's discovery orders. That is, as did IBM, ACS identifies a small number of time entries, speculates that there are larger problems with the trial court's determination of the amount of sanctions, and encourages this court to reweigh

26

the evidence and reassess the trial court's award.

The amount of sanctions specified in the trial court's order is less than the total amount IBM requested, and within the range of the time record evidence IBM submitted in support of its motion for sanctions. Thus, as we did with IBM's appeal, we decline ACS's invitation to second-guess the trial court's judgment, and affirm the trial court's determination of the amount of sanctions to be paid by ACS.

**Conclusion**

The trial court did not abuse its discretion when it awarded ACS some, but not all, of the damages it requested as a result of its participation in discovery as a non-party under Trial Rule 34. Nor did the trial court abuse its discretion when it awarded IBM some, but not all, of the attorneys' fees and other damages it incurred as a result of ACS's failure to comply with the trial court's discovery orders. We therefore affirm the trial court's orders on both matters.

Affirmed.

MAY, J., and BRADFORD, J., concur.

27