

FILED

Aug 14 2015, 6:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

E. Kent Moore
Laszynski & Moore
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Christine A. DeSanctis
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Wesley McDivitt,

*Appellant,*

v.

Sue McDivitt,

*Appellee*

August 14, 2015

Court of Appeals Case No.
79A02-1501-DR-29

Appeal from the Tippecanoe Superior
Court

The Honorable Thomas H. Busch,
Judge

Cause No. 79D02-1401-DR-19

**Baker, Judge.**

[1] Wesley McDivitt appeals the judgment of the trial court ordering him to pay one-half of his monthly pension benefits to his ex-wife, Sue McDivitt. Finding that the trial court based its judgment on an erroneous interpretation of Wesley's employment severance agreement, we reverse.

# Facts[1]

[2] Wesley and Sue were married on September 9, 1999. A week before their marriage, the couple entered into a prenuptial agreement. The agreement contained the following provision:

> Section 5.1. <u>Ownership of Benefits.</u> Wife agrees that the benefits under the Husband's 401K Plan and IRA Retirement Plan and any other retirement benefits from Indianapolis Life Insurance Company or Husband's subsequent employer are the sole and separate property of Husband, and the parties intend and agree that such benefits, all account balances, and additions thereto shall continue after their marriage to constitute the separate property of Husband and be subject to his beneficiary designation. Wife knows and understands the rights and benefits in such plans to which she would be entitled as Husband's spouse, in the absence of any agreement, and hereby agrees to waive such rights and benefits.

Appellant's App. p. 34.

[3] At the time the prenuptial agreement was signed, Wesley was employed by the Indianapolis Life Insurance Company. On July 28, 2000, Wesley elected to retire and begin receiving his pension. Wesley signed a severance agreement

---

[1] We held oral argument in this case in Indianapolis on July 27, 2015. We would like to thank counsel for their exceptional oral advocacy.

providing that he would receive his pension benefits in the form of an annuity. The agreement provided a list of several different types of annuities, from which Wesley selected a "joint with 100% to survivor" annuity.[2] Ex. 1. Wesley began receiving the payments on August 1, 2000. These payments came in the form of checks made payable to Wesley alone.

[4] On January 22, 2014, Wesley filed a petition to dissolve the marriage. The trial court held a hearing on November 10 and 17, 2014. At the hearing, Wesley and Sue agreed on all issues except for the disposition of Wesley's pension. The trial court issued an order dissolving the marriage on November 21, 2014. On December 12, 2014, the trial court issued a further order regarding the disposition of Wesley's pension benefits. In that order, the trial court concluded as follows:

1. Prior to selecting his retirement benefits, the Husband had sole ownership of the policy and the absolute power to select his benefits and to name a Co-Annuitant and Beneficiary or not.

2. After electing his retirement benefits, the Husband was bound by the election.

3. The Husband elected a joint and survivor policy. The company wrongly listed the Wife as Beneficiary, in other words the person who receives benefits after the Husband's death, rather than as Co-Annuitant, the person who shares the benefits during the lifetime of the Husband.

---

[2] Under federal law, Wesley was required to receive his benefits in the form of a joint and survivor annuity unless Sue consented to a different form in writing. 29 U.S.C. § 1055(a), (c); *Duran v. Duran*, 585 N.E.2d 1373, 1376 (Ind. Ct. App. 1992). Wesley's severance agreement contained a waiver form for Sue to sign if she wished to consent to Wesley choosing a different type of annuity. Ex. 1. Sue did not sign this consent form. *Id.*

4.    By selecting a joint and survivor policy, the Husband transferred ownership of the proceeds of the policy to the Wife jointly for life, and to the Wife exclusively after the Husband's death.

Appellant's Br. p. 13-14. Consequently, the trial court ordered Wesley to pay Sue one-half of all annuity payments he received from that point forward. Wesley now appeals.

# Discussion and Decision

[5] The trial court found that Wesley, by entering into a severance agreement in which he elected to receive his benefits in the form of a joint and survivor annuity, gave Sue an ownership interest in the annuity payments he is presently receiving and, thereby, waived his right to sole ownership of those benefits as provided for in the couple's prenuptial agreement. The trial court based this conclusion on its interpretation of the terms of Wesley's severance agreement.

[6] As the interpretation of a contract is primarily a question of law, our standard of review is essentially the same as that applied by the trial court. *Magee v. Garry-Magee*, 833 N.E.2d 1083, 1087 (Ind. Ct. App. 2005). When interpreting a contract, our ultimate goal is to determine the intent of the parties when they made the agreement. *Metro Holdings One, LLC v. Flynn Creek Partner, LLC*, 25 N.E.3d 141, 157 (Ind. Ct. App. 2014), *trans. denied*. In making this determination, "we begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id.*

(quotations omitted). We attempt to construe the language of a contract so that no word, phrase, or term will be rendered meaningless or ineffective. *Id.*

[7] However, a contract may be ambiguous if its terms are susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007). When a contract is ambiguous, extrinsic evidence may be examined to determine the parties' reasonable expectations. *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1310 (Ind. Ct. App. 1991).

[8] Here, the trial court examined the terms of the severance agreement, beginning with the term "co-annuitant." It concluded that this term meant "the person who shares the benefits" during Wesley's lifetime. Appellant's Br. p. 14. Although "co-annuitant" is not explicitly defined in the agreement, other provisions of the agreement tend to support the trial court's conclusion. For instance, the agreement provides:

> **Payees.** Annuity payments due during the sole lifetime of the Participant shall be made to the Participant.[3] *Annuity payments under a joint and survivor annuity shall be payable to the Participant and the Co-Annuitant* while both are living and to the survivor of them after the death of the first of them.

Ex. 1. (emphasis added). The fact that checks are to be made payable to both the participant and the co-annuitant indicates that the co-annuitant shares in the

---

[3] The agreement lists Wesley as the participant. Ex. 1.

ownership of the payments. Thus, we believe that the trial court's conclusion on this point is sound.

[9] The trial court next concluded that Sue is a co-annuitant. On this point, we cannot agree. As for the plain terms of the agreement, the first page provides a space where a co-annuitant could be listed, but that space has been left blank. *Id.* Instead, Sue is listed as the beneficiary. *Id.* The agreement defines "beneficiary" as "the person . . . to receive any benefits due after the death of the Participant and Co-Annuitant or Contingent Annuitant, if any." *Id.* The agreement contains no provision indicating that a beneficiary shares ownership of payments made to a participant during the participant's lifetime. The trial court acknowledged that Sue was listed as the beneficiary rather than as a co-annuitant, but concluded that that was a mistake. Appellant's Br. p. 14.

[10] However, even if the trial court were correct to conclude that Sue's designation was ambiguous in light of the agreement's terms, its conclusion that Sue is the co-annuitant becomes untenable when one considers the extrinsic evidence in the record. The trial court found that "the checks under the annuity had been payable to [Wesley] alone." *Id.* at 13. As we have already observed, the agreement provides that "[a]nnuity payments under a joint and survivor annuity *shall be payable to the Participant and the Co-Annuitant* while both are living . . . ." Ex. 1. (emphasis added). Accordingly, evidence that the checks were not made payable also to Sue indicates that she is not a co-annuitant. The trial court's conclusion to the contrary finds no support in the terms of the agreement itself or the extrinsic evidence in the record.

We also note that the current administrator of Wesley's pension agrees with his position.[4] In 2014, the administrator sent the following letter in response to Wesley's questions regarding Sue's interest in the benefits:

> Dear Mr. McDivitt,
>
> ***
>
> You elected payment in the form of a Joint and Survivor Annuity, naming your spouse, Sue E. McDivitt, as your designated beneficiary. In the event of your death, Sue will receive 100% of your monthly benefits for the remainder of her life. If Sue is the first to die, you will continue to receive the monthly benefit until your death. Sue is not the participant or an owner, as she was not the employee covered under the pension plan; she is simply your designated beneficiary set to receive survivor benefits under the plan in the event of your death.

Husband's Ex. C. This letter, which was entered into evidence at the hearing without objection, further persuades us that the trial court misinterpreted the terms of Wesley's severance agreement.

Despite the evidence to the contrary, Sue believes that this Court's decision in *Perdue v. American Express Travel Related Services Company, Inc.* compels us to find in her favor. 609 N.E.2d 1141 (Ind. Ct. App. 1993). In that case, Perdue had a life insurance policy that designated his wife as the beneficiary. *Id.* The couple had signed a prenuptial agreement that provided that all life insurance proceeds were to remain the separate property of either spouse. *Id.* at 1142. When Perdue died, proceeds from the life insurance policy were paid to his wife. *Id.*

---

[4] Wesley's pension is now administered by the Athene Annuity & Life Assurance Company. Tr. p. 10.

at 1141.  Perdue's estate brought suit to recover the proceeds, citing the prenuptial agreement.  *Id.*

[13]  This Court found that "[t]he antenuptial agreement clearly states that nothing barred [Perdue] from giving any part of his own Separate Estate to [his wife]." *Id.* at 1144.  It went on to find that Perdue's insurance policy did not allow him to change his beneficiary and, therefore, his wife "acquired a vested right in the policy upon issuance and acceptance." *Id.*  Consequently, this Court held that Perdue had given his wife a vested interest in the policy, as allowed for by the prenuptial agreement, which she thereafter held as part of her separate estate. *Id.*

[14]  Sue points out that the prenuptial agreement at issue here similarly allows either party to make a voluntary transfer of property to the other.  Appellant's App. p. 29.  However, despite that fact, the question remains whether Wesley actually made a voluntary transfer.  In *Perdue*, this Court determined that Perdue had made such a transfer because the life insurance contract provided that he could not change his beneficiary.  *Perdue*, 609 N.E.2d at 1144.  We held that: "Inasmuch as [Perdue] had no power of disposition reserved in the policy, that is, could not change the primary beneficiary from his spouse . . . to someone else, [his spouse] acquired a vested right in the policy upon issuance and acceptance." *Id.*

[15]  However, Sue cannot show that she has acquired such a vested right here.  Wesley's severance agreement is silent as to whether the participant and owner

of a joint and survivor annuity can change beneficiaries.[5]  Ex. 1.  Furthermore, even if we construed the agreement to bar Wesley from changing his beneficiary, that would only provide Sue with a vested interest in the payments made following Wesley's death.  It would not indicate that Sue acquired any interest in payments made to Wesley during his life.  Consequently, our holding in *Perdue* is inapplicable to the facts of this case.

[16]  While we admit that Wesley's severance agreement is not a model of precision, we are obliged to determine its meaning in accordance with the parties' reasonable expectations.  Here, neither the plain terms of the agreement nor extrinsic evidence in the record counsel in favor of adopting Sue's interpretation.  The terms unambiguously list Sue as a beneficiary rather than a co-annuitant, and evidence in the record indicates that the checks under the agreement have been made payable to Wesley alone.  In light of this, we cannot conclude that when Wesley entered into the agreement, the parties reasonably believed that Sue had acquired an ownership interest in annuity payments made to Wesley during his lifetime.  As we find that Wesley transferred no such ownership interest to Sue, the payments remain his sole property pursuant to the terms of the couple's prenuptial agreement.

---

[5] Wesley asserts that he has always understood the agreement to mean that his pension benefits would remain "his alone during life, but with [Sue] as a named beneficiary."  Reply Br. p. 4.  As Wesley is not now seeking to change his beneficiary, we express no opinion as to whether the terms of Wesley's severance agreement would allow him to do so.

The judgment of the trial court is reversed.

Najam, J., and Friedlander, J., concur.