

**FILED**

Jun 22 2017, 9:03 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John R. Maley
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Kevin W. Betz
Sandra L. Blevins
Benjamin C. Ellis
Betz + Blevins
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

The Care Group Heart Hospital,
*Appellant-Defendant*,

v.

Roderick J. Sawyer, M.D.,
*Appellee-Plaintiff*.

June 22, 2017

Court of Appeals Case No.
49A05-1603-PL-580

Appeal from the Marion Superior Court

The Honorable David J. Dreyer, Judge

Trial Court Cause Nos.
49D10-1208-PL-32513
49D10-1307-PL-28479

**Brown, Judge.**

The Care Group Heart Hospital (the "Hospital") appeals from an order denying its motion to dismiss issued on January 28, 2013, a final judgment entered on February 18, 2016, and an order denying its motion to correct errors issued the same day, in favor of Roderick J. Sawyer, M.D.[1]  The Hospital raises one issue which we revise and restate as whether the trial court erred in denying the Hospital's motion to dismiss and in entering judgment in favor of Dr. Sawyer. Additionally, Dr. Sawyer presents the following issues on cross-appeal:

I.    Whether the court erred in granting partial summary judgment in favor of the Hospital; and

II.   Whether the court abused its discretion in awarding attorney fees to Dr. Sawyer as a result of the Hospital's misconduct during discovery.

We affirm in part, reverse in part, and remand.[2]

### Facts and Procedural History

Dr. Sawyer began practicing as a cardiologist in 1996 and became a partner/shareholder of The Care Group ("TCG") in 1999.  In 2003, he became a member of the Hospital when it was founded by physicians of TCG and St. Vincent Health.  On July 1, 2010, St. Vincent Health purchased the assets of TCG, resulting in the formation of the St. Vincent Medical Group, Inc. ("SVMG").  At that point, Dr. Sawyer became an employee of SVMG.  On

---

[1] Also named as defendants below are the St. Vincent Medical Group, Inc. and Christopher Hollon, M.D. The St. Vincent Medical Group, Inc. does not appeal the judgment entered against it, and the jury found in Dr. Hollon's favor.

[2] On May 23, 2017, we held oral argument in Indianapolis.  We thank counsel for their well-prepared advocacy.

July 22, 2011, SVMG notified Dr. Sawyer by letter that his employment was terminated, effective immediately. The letter stated:

> The decision to terminate your [employment] was made due to your continued failure to comply with SVMG's policies, guidelines and expectations around appropriate coding services and medical record documentation, despite SVMG's efforts to help you improve. Further, as we have also discussed on several occasions, your office management style and unprofessional behavior has contributed to a dysfunctional work environment.

Appellant's Appendix Volume 2 at 116.

[3] The relationship between Dr. Sawyer, SVMG, and the Hospital is governed by three contracts. First, SVMG and Dr. Sawyer are parties to an employment agreement (the "Employment Agreement") regarding Dr. Sawyer's employment by SVMG as a cardiologist. Second is the Amended and Restated Operating Agreement of the Hospital (the "Operating Agreement"), signed by the Hospital's secretary, which governs "certain aspects of the operations" of the Hospital and sets forth "the rights and obligations of the Members," which included Dr. Sawyer. *Id.* at 118. Third, SVMG, Dr. Sawyer, and the Hospital signed a "Joinder Agreement" regarding the redemption of Dr. Sawyer's membership interest in the Hospital in the event of the termination of his employment. *Id.* at 114.

[4] The letter of July 22, 2011, stated that Dr. Sawyer's employment under the Employment Agreement was terminated pursuant to Section 4.2-2(a) and 4.2-

2(i). Those provisions, as well as other relevant sections of the Employment Agreement, are as follows:

ARTICLE IV

TERM AND TERMINATION

4.1  Term.  This Agreement shall be effective as of the date of its execution but the employment contemplated hereunder shall begin on July 1, 2010 ("Physician's Start Date").  The Agreement shall have a term of ten (10) years beginning with Physician's Start Date.  The Agreement shall automatically renew thereafter for one (1) year terms . . . .

4.2  Termination.  Notwithstanding Section 4.1, this Agreement shall terminate on the occurrence of any of the following events:

* * * * *

4.2-2  Immediate Termination for Cause.  [SVMG] may immediately terminate this Agreement at its sole option by providing Physician written notice, upon the occurrence of any of the following:

(a)  any act or omission of Physician which, in [SVMG's] reasonable opinion, after consultation with the Division (or as determined through the Division's peer review process for (i) the evaluation of the qualifications, competence, or professional conduct of a professional health care provider, or (ii) the evaluation of patient care (collectively, the "**Peer Review Matters**"), as set forth in I.C. § 34-30-15-16), is grossly and materially contrary to the

business interests, reputation or goodwill of [SVMG];

\* \* \* \* \*

(i) in [SVMG's] reasonable opinion, Physician consistently fails to provide professional medical services within the standard of care expected by [SVMG];

\* \* \* \* \*

ARTICLE VIII

MISCELLANEOUS

8.14  Joinder Agreement re: SVHCI.  If, as of the date of this Agreement, Physician is a member of [the Hospital], as a continuing condition of employment hereunder a Joinder Agreement having the form attached hereto as Exhibit C shall remain in effect as among Physician, [the Hospital], and [SVMG].

*Id.* at 94-95, 103.  Dr. Sawyer signed the Employment Agreement on May 10, 2010, and Richard I. Fogel, M.D., signed as CEO of SVMG on June 25, 2010.

[5]     The Joinder Agreement provides as follows:

This Joinder Agreement is effective as of the 1st day of July, 2010, by and among [SVMG], [the Hospital], and Roderick J. Sawyer, M.D. ("Physician").

WHEREAS, [SVMG] and the Physician are parties to that certain Physician Employment Agreement of even [sic] date herewith (the "Agreement"); and

WHEREAS, Physician is a member of [the Hospital]; and

WHEREAS, [the Hospital] is a member of St. Vincent Heart Center of Indiana, LLC ("SVHCI"); and

WHEREAS, the parties hereto desire that Physician and [the Hospital] shall cause Physician's membership interest in [the Hospital] to be redeemed and Physician to no longer have any continuing direct or indirect membership, ownership or investment interest in SVHCI in the event that Physician's employment referenced in the Agreement is terminated for any reason (other than a termination pursuant to Section 4.4(c)[3] of the Agreement).

NOW THEREFORE, in consideration of the foregoing premises and the mutual agreements and covenants contained herein, the parties hereto agree as follows:

1. Mandatory Redemption. Within ninety (90) days of any termination of employment between Physician and [SVMG] . . . and provided that [the Hospital] then holds a membership interest in SVHCI, Physician and [the Hospital] shall cause Physician to be redeemed of his interest in [the Hospital] such that, following such redemption, Physician shall have no

---

[3] Section 4.4 of the Employment Agreement concerns voluntary termination of employment by the physician on certain conditions, and subsection (c) addresses the termination or elimination of the cardiology division or the TCG practice unit by SVMG.

continuing direct or indirect membership, ownership or investment interest in SVHCI.

*Id.* at 114. The Joinder Agreement stated that the parties executed the agreement as of the date noted, July 1, 2010, and was signed by Richard I. Fogel, M.D., FACC, as CEO of SVMG, James B. Hermiller, M.D., FACC, FSCAI, as Board Chairman of the Hospital, and Dr. Sawyer.

[6] In addition, the relevant portions of the Hospital's Operating Agreement are as follows:

## AGREEMENT

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, and in consideration of becoming a Member of the [Hospital], the Members . . . agree as follows:

## ARTICLE I

## DEFINITIONS AND GENERAL PROVISIONS

**Section 1.1  Definitions**. . . .

\* \* \* \* \*

"**Involuntary Withdrawal**" means, with respect to any Member, the occurrence of any of the following events: . . . (v) the termination of employment or any material agreement the Member is a party to with [TCG] or, after the Acquisition Date, SVMG.

\* \* \* \* \*

# ARTICLE III

## MEMBERS AND CAPITAL STRUCTURE

\* \* \* \* \*

**Section 3.2** **Units Representing Interests**.  Interests in the [Hospital] shall be represented by the Units held by each Member. . . .

\* \* \* \* \*

**Section 3.6** **No Redemption Rights**.  Except as may otherwise be specifically provided in this Agreement or be determined by the Managers, no Member or former Member shall be entitled, at or after the time the Member ceases to be a Member of the [Hospital] or at any other time, to demand or receive from the [Hospital] a return of any of the Member's Capital Contributions or the purchase or redemption of, or other payment for, the Member's Units or Interest.

\* \* \* \* \*

# ARTICLE VIII

## TRANSFERS AND WITHDRAWAL

\* \* \* \* \*

**Section 8.3  Involuntary Withdrawal**.  Immediately upon the date of an Involuntary Withdrawal, the withdrawing Member shall cease being a Member of the [Hospital] and all rights associated with such membership shall terminate.  The involuntary withdrawing Member's Interest shall be purchased by the [Hospital] pursuant to Section 8.4 hereof.

**Section 8.4  Payment to Withdrawing Member**. . . .  [I]f withdrawal occurs after completion of three (3) years of operation of the Heart Hospital, the [Hospital] shall pay a cash amount equal to the greater of: (i) three (3) times the annual cash flow distribution based on the average of the three (3) most recent full fiscal years; or (ii) the value of Member's Capital Account at the point of withdrawal. . . .

* * * * *

**Section 8.8  Injunction**.  The parties recognize that a breach or threatened breach by any Member of the Company of the provisions of Article VIII will result in immediate and irreparable injury to Company as to which there will be no adequate remedy at law.  Accordingly, Company shall in such event be entitled to obtain temporary and permanent injunctive relief to enjoin or restrain any such breach or threatened breach by any Member of the Company and each such person hereby waives by requirement that Company post any bond or security in such event.  Each party shall be entitled to pursue any other available remedies in connection with a breach of this Agreement, including recovery of monetary damages, and shall in any event be entitled to cover from the non-prevailing party, reasonable attorneys' fees and costs incurred in the successful enforcement of the provisions of this Agreement.  The remedies herein provided shall be cumulative and no one remedy shall be construed as exclusive of any other or of any remedy provided by law and failure of any party to exercise any remedy at any time

shall not operate as a waiver of the right of such party to exercise any remedy for the same or subsequent act at any time thereafter.

*Id.* at 118, 120, 123-124, 132-133, 136-137. The effective date of the Operating Agreement is listed as May 3, 2010.

[7] Following Dr. Sawyer's termination, Brian Morris, who was SVMG's Chief Financial Officer and a CPA, calculated Dr. Sawyer's unit redemption payment pursuant to Section 8.4 of the Operating Agreement, determining that the three prior year distributions computation totaled $196,787, which was greater than Dr. Sawyer's capital account balance of $123,572. On March 15, 2012, Morris sent Dr. Sawyer a redemption check in the amount of $196,787 and an attached letter detailing the calculation.

[8] On August 29, 2012, Dr. Sawyer filed an Amended Complaint for Damages and Demand for Jury Trial against SVMG and the Hospital alleging claims of breach of contract, breach of duty of good faith and fair dealing, and tortious interference with business relationships against SVMG and a claim of breach of contract against the Hospital.[4] The claim against the Hospital, listed as Count II of the amended complaint, stated that: (1) the Joinder Agreement mandates redemption of all interests in the Hospital within ninety days of any termination; (2) the Operating Agreement, as amended, was adopted by the

---

[4] On July 22, 2013, Dr. Sawyer filed a complaint against Christopher Hollon, M.D., under another cause number. On July 23, 2015, that cause was consolidated with this case for jury trial.

Hospital upon the acquisition by SVMG of TCG's assets, and outlines each Member's interests in the Hospital; (3) the Hospital sent Dr. Sawyer a Unit Redemption Agreement and check for $196,787, allegedly for the ten membership unit interest in the Hospital, almost eight months after his employment was terminated; (4) the $196,787 amount "is substantially less than what [he] would have received had he remained employed by SVMG for the duration of his Employment Agreement"; (5) such payment was well outside the ninety-day time period; and (6) as a result the Hospital breached the Joinder and Operating Agreements. *Id.* at 82.

[9] On October 22, 2012, the Hospital filed a motion for partial dismissal pursuant to Ind. Trial Rule 12(B)(6) to dismiss Count II of the complaint "to the extent it relates to the specific value of Plaintiff's membership interest in [the Hospital] as reflected on the redemption check remitted to him in March of 2012." *Id.* at 144. In its brief in support of its motion, the Hospital asserted that Dr. Sawyer's argument amounts to a claim that he "was wronged because [the Hospital] actually followed the language of the Operating Agreement, instead of ignoring its precise valuation formula . . . and awarding [Dr. Sawyer] a higher amount based on what he *might have received* if he had remained employed for the duration of his Employment Agreement," which has no basis in law or fact. *Id.* at 151. It argued that it is possible that the ten-unit membership interest held by Dr. Sawyer could have decreased in value were he to have remained employed for the duration of the Employment Agreement. On November 20, 2012, Dr. Sawyer filed a response in opposition to the Hospital's motion to dismiss

asserting that "[b]ecause SVMG and [the Hospital] are both parties to the Joinder Agreement which required the redemption of Dr. Sawyer's interest in [the Hospital] upon the termination of his employment, SVMG's wrongful termination" and "breach of the Employment Agreement is also a breach by [the Hospital] of the Joinder Agreement which is a part of the Employment Agreement." *Id.* at 161. On January 28, 2013, the court denied the Hospital's motion.

[10] On August 9, 2013, Dr. Sawyer filed a Motion to Compel Documents and Interrogatory Responses from SVMG and the Hospital stating at the outset:

> For over eight months, the Defendants have been stalling in providing complete responses to Dr. Sawyer's first set of discovery requests, which were served November 5, 2012. After months of extensions, the Defendants produced a limited amount of information and documents in March 2013, and failed to provide any substantive responses to the majority of [his] requests, primarily on the basis of boilerplate objections, but also on the basis of unsupported claims of privilege. And although [he] sent a letter June 14, 2013 requesting supplementation and clarification, the Defendants still have not provided any additional substantive information or documents. Defendants' delays and stalling tactics have caused progress in this case to grind to a halt, and Court intervention is necessary to get it back on track.

Appellee's Appendix Volume 2 at 201-202. Dr. Sawyer also requested attorney fees and costs associated with pursuing the motion.

[11] On March 26, 2014, the Hospital filed a motion for partial summary judgment and designation of evidence focused on Dr. Sawyer's claim regarding the Operating Agreement. The motion asserted that it "did what it was required to do under the Operating Agreement: provide Dr. Sawyer a payout equal to the value of his interest on the day that [SVMG] terminated his employment. [It] performed in accordance with its obligations under the Operating Agreement." Appellant's Appendix Volume 3 at 11. SVMG also filed a separate motion for summary judgment that same day.

[12] On June 9, 2014, Dr. Sawyer filed his response to both defendants' summary judgment motions and designation of evidence. Regarding the Hospital's motion, Dr. Sawyer asserted that summary judgment was inappropriate "because the redemption of his interests resulted from the wrongful termination of his employment, and because the timeliness of redemption payments is governed principally by the Operating Agreement." *Id.* at 139. He argued that, based upon the trend over the past eight years in which the value of the ten member unit shares having never decreased, he "believes that the value of his interest would have been much greater over the next nine years than the $196,787 he received." *Id.*

[13] On October 8, 2014, the court issued its Order Granting Plaintiff's Motion to Compel Documents and Interrogatory Responses from Defendants containing numerous specific orders to supplement various interrogatories, to expressly identify which documents were responsive to various discovery requests, and to provide other substantive responses to document production requests within ten

days of the order. The court also ordered that Dr. Sawyer "shall be, and hereby is, awarded his costs and reasonable attorney fees associated with pursuing *Plaintiff's Motion to Compel Documents and Interrogatory Responses from Defendants*" and that Dr. Sawyer shall submit his bill of costs within fourteen days. Appellee's Appendix Volume 5 at 154.

[14] On October 21, 2014, Dr. Sawyer filed his Motion for Contempt Hearing and for new Deadline to Submit Bill of Costs and Response in Opposition to Motion for Extension of Time stating that the court should set a contempt hearing for SVMG and the Hospital's failure to comply with the court's order of October 8, 2014, within ten days because their "intransigence serves only to further delay resolution of this matter, and because the Defendants have embraced a strategy of delay at every step in this litigation." *Id.* at 178.

[15] The court held a hearing on April 15, 2015. On April 23, 2015, it issued its Entry of April 23, 2015, stating as follows:

> After hearing on pending motions was conducted April 15, 2015, the Court finds:
>
> * * * * *
>
> 2. Regarding Plaintiff's motions to compel, all pending motions are consolidated with October 21, 2014 Plaintiff's Motion for Contempt Hearing and For New Deadline To Submit Bill of Costs. The Court grants as follows:
>
> > a. Contempt by Defendant is found with respect to time and delay of discovery responses.

b. Any expenses, fees, or costs shall be determined when submitted by [Dr. Sawyer].

Appellee's Appendix Volume 7 at 77.

[16] On November 13, 2015, the court issued its Entry of Orders on Pending Motions which granted the Hospital's summary judgment motion with respect to the Operating Agreement and "[d]enied [the motion] with respect to the Joinder Agreement."[5] Appellant's Appendix Volume 3 at 238.

[17] On January 11, 2016, the court commenced a jury trial. At the close of Dr. Sawyer's case-in-chief, the Hospital moved for judgment on the evidence under Ind. Trial Rule 50 because "there has been no evidence presented today in any form about Dr. Sawyer's allegations regarding how [the Hospital] failed to meet its obligations under that agreement, what [the Hospital's] obligations were, or any damages arising from any alleged breach . . . ." Transcript Volume 8 at 1839. The court denied the motion. At the end of trial, the Hospital renewed its motion for a directed verdict because "there was no evidence of breach," and the court again denied the motion. Transcript Vol. 11 at 2646.

[18] On January 22, 2016, the jury entered a verdict in Dr. Sawyer's favor and against SVMG and awarded damages in the amount of $1,112,152. It found for

---

[5] As observed above, the Hospital did not move for summary judgment with respect to the Joinder Agreement.

Dr. Sawyer and against the Hospital and awarded damages in the amount of $470,000.

[19] On January 29, 2016, the Hospital filed a motion to correct error asserting that there was no breach in calculating and paying the redemption amount of $196,787. The Hospital's motion requested that the court correct the jury's award by entering judgment on the evidence in the amount of $6,559.60, which it stated was the amount properly recoverable as interest for the delay in paying Dr. Sawyer.[6] On February 18, 2016, the court entered judgment on the jury verdicts and denied the Hospital's motion to correct error.

[20] On March 28, 2016, Dr. Sawyer filed his Verified Petition for Damages "pursuant to the Court's October 8, 2014 *Order Granting Plaintiff's Motion to Compel Documents and Interrogatory Responses From Defendants*, and the Court's *Entry of April 23, 2015*" seeking damages in accordance with those orders. Appellee's Appendix Volume 8 at 140. In his verified petition, Dr. Sawyer asserted that he "incurred hundreds of thousands of dollars of legal fees and expenses" due to the defendants' discovery misconduct and provided a spreadsheet, attached as Exhibit 1, detailing those fees. *Id.* at 143. The verified petition stated that the relevant attorney fees totaled $471,025.15 but that, "[i]n

---

[6] The Hospital noted in its motion that "[t]he 12 month interest earned [at the statutory rate of eight percent] on the total investment of $196,787 would be $15,742.96 or $1,311.92 per month. Five months of that interest is therefore equal to $6,559.60." Appellant's Appendix Volume 4 at 36.

the interests of justice and fairness," Dr. Sawyer was willing to accept a total of $450,000. *Id.* at 145.

[21] On May 18, 2016, SVMG, the Hospital, and Dr. Hollon filed their Defendants' Responses to Plaintiff's Verified Petition for Damages stating at the outset that Dr. Sawyer, "based upon a very limited Order of the Court, has asked for several hundred-thousand dollars, hoping that even a 'compromise' will reward him with far more in attorney's fees than he deserves." Appellee's Appendix Volume 9 at 2. They asserted that Trial Rule 37 does not provide for the extent of the fees requested by Dr. Sawyer, and that SVMG agrees to certain fees, listed in the filing as Appendix A totaling $27,233.19. Regarding the Hospital, the response stated that Dr. Sawyer "never identified an iota of discovery [it] failed to produce. [The Hospital] respectfully requests that this Honorable Court DENY [Dr. Sawyer's] fee petition as to it individually." *Id.* at 6. It also noted that Dr. Sawyer was requesting fees for other unrelated matters, including responding to a motion that he lost which was not related to the discovery dispute, a *qui tam* lawsuit, agreed protective orders, peer review motions, quashed depositions, expert witnesses, a motion for default judgment filed by Dr. Sawyer which was denied, responding to motions for summary judgment filed by SVMG, Dr. Hollon, and the Hospital, which were granted, and a number of other matters enumerated in the filing.[7] The defendants requested

---

[7] The defendants broke Dr. Sawyer's fee schedule down to appendices A through V related to each of the categories identified in the response.

that the court not grant any fees against Dr. Hollon or the Hospital and that it "only grant those fees consistent with the Court's prior order and [SVMG's] stipulation, and with Trial Rule 37 and controlling case-law." *Id.* at 13.

[22] On June 30, 2016, the court entered an order which in relevant part granted Dr. Sawyer's verified petition in the amount of $27,233.19, without explanation.

### *Issue on Appeal*

[23] The issue raised on appeal by the Hospital is whether the trial court erred in denying the Hospital's motion to dismiss and in entering judgment in favor of Dr. Sawyer. We first address the Hospital's motion to dismiss.

[24] A complaint may not be dismissed under Ind. Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief. *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied*. We view motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits. *Id.* When reviewing a trial court's grant of a motion to dismiss, we view the pleadings in a light most favorable to the nonmoving party, and we draw every reasonable inference in favor of that party. *Id.* We will not affirm a dismissal under Ind. Trial Rule 12(B)(6) unless it is apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances. *Id.*

[25] The Hospital argues that it followed the plain language of the Joinder Agreement and the Operating Agreement in redeeming Dr. Sawyer's ten-unit membership interest and in valuing those shares pursuant to Section 8.4 of the Operating Agreement. It asserts that Dr. Sawyer concedes that the calculation is accurate and that he essentially argues "that the Employer's wrongful termination means that the Employer and the Hospital are accountable for the alleged 'loss of redemption value.'" Appellant's Brief at 22. The Hospital postulates that this argument is erroneous for three reasons. First, it asserts that, under the Operating Agreement, withdrawal is automatic upon termination "*for any reason*"[8] and that it makes sense that physicians no longer employed at the Hospital would not remain owners. *Id.* Second, the Hospital notes that it and SVMG are separate entities and that Dr. Sawyer did not bring a claim of tortious interference with his employment against the Hospital. Third, it argues the plain language of the Operating Agreement, in Section 3.6, does not allow for "an alleged 'loss of redemption value.'" *Id.*

[26] Dr. Sawyer argues that "[b]ecause the Joinder Agreement and the Operating Agreement were integrated into the Employment Agreement, [the Hospital] breached the Joinder Agreement when it prematurely redeemed [his] unit interests caused by SVMG's breach of the Employment Agreement" in wrongfully terminating him. Appellee's Brief at 35 (footnote omitted). He asserts that the Joinder Agreement "ensured that [he] would receive at least 10

---

[8] We observe that this language is found in the Joinder Agreement, not the Operating Agreement.

years of investment income from [the Hospital] unless he voluntarily quit his employment or passed away." *Id.* at 36. Dr. Sawyer maintains that the contracts were executed as a part of, and in consideration for, the sale of his physician practice to St. Vincent Hospital and that "[r]ather than pay [him] and his partners the full value of [TCG] and [the Hospital], [he] received only a partial payment over three years, and also received a guarantee of employment and investment income for a period of no less than ten years." *Id.* at 37. He argues that while the Hospital was required to redeem his membership interest upon a termination "in accordance with the Employment Agreement," it was not permitted to otherwise redeem his interest. *Id.* He contends that it was therefore proper for the court to have allowed him to try this claim.

[27] The Hospital argues in its reply that Dr. Sawyer waived this issue by failing to cite to any authority for his position. It states that Dr. Sawyer does not cite to legal authority to demonstrate that the Hospital and SVMG "are somehow not separate because there is some relation and common ownership" and that in fact the Hospital, a limited liability company, and SVMG, a corporation, are in fact separate, noting that Dr. Sawyer "was an owner in one and an employee of the other." Appellant's Reply Brief at 13-14. The Hospital also asks this Court to take judicial notice of the fact that, as demonstrated by filings with the Indiana Secretary of State (submitted via addendum), SVMG and the Hospital have "different principals, different addresses, and different registered agents." *Id.* at 14 n.2.

[28] This question is one of contract interpretation. Generally, "[i]nterpretation of a contract is a pure question of law and is reviewed *de novo*." *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005). If its terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Id.* Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. *Id.* "A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002), *reh'g denied*; *see also McDivitt v. McDivitt*, 42 N.E.3d 115, 117 (Ind. Ct. App. 2015) (a contract may be ambiguous if its terms are susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning), *trans. denied*. A contract is not ambiguous merely because the parties disagree as to its proper construction. *Jernas v. Gumz*, 53 N.E.3d 434, 444 (Ind. Ct. App. 2016), *trans. denied*. When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. *Id.* This requires the contract to be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* Rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable expectations. *Id.* at 444-445 (citing *Lily, Inc. v. Silco, LLC*, 997 N.E.2d 1055, 1064 (Ind. Ct. App. 2013) (citing *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010), *reh'g denied*, *trans. denied*). When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder. *Id.* at 445; *see also McDivitt*, 42 N.E.3d at 117 (when a contract is ambiguous, extrinsic evidence may be examined to determine the

parties' reasonable expectations). When a contract contains general and specific provisions relating to the same subject, the specific provision controls. *Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011).

[29] We are not persuaded by the Hospital's argument that the language in the Joinder Agreement that Dr. Sawyer's membership interest be "redeemed" if his "employment referenced in the [Employment] Agreement is terminated *for any reason*" includes circumstances constituting a breach of the Employment Agreement. Appellant's Appendix Volume 2 at 114 (emphasis added). We disagree with the Hospital's suggestion that Dr. Sawyer's request would have the effect of his maintaining an ownership interest in the Hospital after he was no longer employed by SVMG. Dr. Sawyer's complaint requests consequential damages, i.e., the benefit of his bargain, as a result of a breach by the Hospital and not an order that the Hospital transfer his ownership interest back to him to hold through the end of the ten-year term. *See, e.g.*, *L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031, 1043 (Ind. Ct. App. 2012) (noting that "[a] party injured by a breach of contract may recover consequential damages from the breaching party," that "[s]uch consequential damages may include lost profits, providing the evidence is sufficient to allow the trier of fact to estimate the amount with a reasonable degree of certainty and exactness," and that "[c]onsequential damages may be awarded if the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made").

[30] Under the plain language of the Joinder Agreement, we find that the key phrase is the reference to the "employment referenced in the [Employment] Agreement [being] terminated . . . ." Appellant's Appendix Volume 2 at 114. Grounds for termination of Dr. Sawyer's employment under the Employment Agreement is specifically defined in Section 4.2 of that agreement, and the inclusion of this phrase in the Joinder Agreement makes clear that termination *under the terms of the Employment Agreement* is required to trigger mandatory redemption of Dr. Sawyer's interest in the Hospital, i.e., his ten membership units. The specific reference in that same clause of the Joinder Agreement to Section 4.4(c) of the Employment Agreement lends further support to this interpretation. Also, we note that the Employment Agreement itself states that "as a continuing condition of employment *hereunder*," the Joinder Agreement "shall remain in effect as among Physician, [the Hospital], and [SVMG]." *Id.* at 103 (emphasis added).

[31] Under the plain language of the Joinder Agreement, signed by Dr. Sawyer and representatives of SVMG and the Hospital, only after termination under the terms of the Employment Agreement should the Hospital redeem Dr. Sawyer's membership interest, in which such redemption is governed by Section 8.4 of the Operating Agreement. Redemption pursuant to this provision under other circumstances would deprive Dr. Sawyer of the benefit of his bargain and constitute a breach of the Joinder Agreement. Also, we are unpersuaded by the Hospital's assertion that Section 3.6 of the Operating Agreement, which limits the right of a member such as Dr. Sawyer to receive a return of Capital Account

contributions or redemption of membership unit interest to those rights specifically provided in the Operating Agreement (and found in Section 8.4), impacts our analysis. We therefore conclude that the court did not err in denying the Hospital's motion to dismiss.

[32] To the extent the Hospital also challenges the court's rulings on its motions for judgment on the evidence under Ind. Trial Rule 50 and its motion to correct error, we need not belabor the topic. Ind. Trial Rule 50 provides that a motion for judgment on the evidence shall be granted "[w]here all or some of the issues in a case . . . are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it . . . ." Ind. Trial Rule 50(A). "Where the issue involves a conclusion of law based on undisputed facts, the reviewing court is to determine the matter as a question of law in conjunction with the motion for judgment on the evidence, and to this extent, the standard of review is de novo." *Cavens v. Zaberdac*, 849 N.E.2d 526, 529 (Ind. 2006). Also, we generally review rulings on motions to correct error for an abuse of discretion. *Ind. Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009); *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008), *reh'g denied*.

[33] The crux of the Hospital's arguments regarding these motions is that Dr. Sawyer did not present any evidence of breach of the Joinder Agreement where it is undisputed that it redeemed Dr. Sawyer's membership interest in the amount of $196,787, following the formula provided in Section 8.4 of the Operating Agreement. It does not challenge the jury's verdict that SVMG

breached the Employment Agreement when it fired Dr. Sawyer. Having concluded above that redemption by the Hospital of Dr. Sawyer's ten-unit membership interest under circumstances other than those constituting a termination of Dr. Sawyer's employment under the Employment Agreement would be a breach of the Joinder Agreement, we conclude that the court did not err in denying the Hospital's motion for judgment on the evidence and its motion to correct error.

### *Cross-Appeal Issues*

### I.

[34] The first issue on cross-appeal is whether the court erred in granting partial summary judgment in the Hospital's favor regarding the Operating Agreement. We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.*

Dr. Sawyer argues that "[a]s with the Joinder Agreement, [the Hospital] breached the Operating Agreement by prematurely redeeming [his] unit interests when SVMG wrongfully terminated his employment in breach of his 10-year Employment Agreement, with more than nine years still remaining." Appellee's Brief at 46. He asserts that the payment was untimely as it was made outside the ninety-day period, that the Joinder Agreement "does not in any way abrogate the Operating Agreement[] and instead reflects an exercise by [the Hospital's] Board of Managers to set a new (and faster) payment schedule in accordance with Section 8.4 of the Operating Agreement," and that such untimely redemption breached not only the Joinder Agreement, but also the Operating Agreement. *Id.* at 48.

The Hospital points out that Dr. Sawyer does not cite to legal authority, and argues that waiver notwithstanding, his argument fails because it is "the same meritless argument [] offered as in response to the Hospital's appeal of the $470,000 judgment." Appellant's Reply Brief at 32. It states that it is undisputed that withdrawal from the Hospital was automatic under the Operating Agreement upon termination of employment, regardless of the reason, and that there is no basis to rule that it breached the Operating Agreement by allegedly prematurely redeeming Dr. Sawyer's ten-unit membership interest. It also argues that, to the extent Dr. Sawyer suggests that the payment was untimely, he and Morris exchanged emails in March 2012 and Dr. Sawyer did not raise the timeliness of the payment in that exchange and

that, at most, Dr. Sawyer is entitled to $6,559.60 as a statutory interest award, rather than the $470,000 awarded by the jury.

[37] In his reply brief, Dr. Sawyer states that the Operating Agreement "both permitted and required [the Hospital] to redeem Dr. Sawyer's unit interests only in the event that his employment was terminated in accordance with the Employment Agreement." Cross-Appellant's Reply Brief at 8. He argues that "[t]he Operating Agreement is silent as to the effect of a wrongful termination on [his] unit interests," and none of the contracts preclude "a recovery of lost business equity income in the event of a premature redemption." *Id.* at 9. He contends that to ignore the interrelatedness of the three contracts "would render the promise of 10 years of security to Dr. Sawyer in his business equity interests completely illusory," that "[n]ot only were the Employment Agreement and Joinder Agreement executed in consideration for the sale of Dr. Sawyer's physician practice to St. Vincent Hospital, but the Operating Agreement was itself amended to facilitate the sale." *Id.* at 11 (citations omitted). Dr. Sawyer argues that a breach of the Operating Agreement involves separate and distinct damages, asserts that the damages awarded "were extremely conservative," and that "[m]ore important, however, the Operating Agreement includes an attorney fee provision [in Section 8.8] – a category of damages that was not available at trial." *Id.* at 12-13.

[38] We find that the court did not err in granting partial summary judgment to the Hospital as to its request for relief based upon the Operating Agreement. That agreement, signed by the Hospital's secretary, governs the Hospital's operations

and sets forth the rights and obligations of the Members, including Dr. Sawyer. Unlike the Employment Agreement and the Joinder Agreement, the Operating Agreement is not a memorialization of an arms-length business transaction between Dr. Sawyer, the Hospital, and SVMG for the sale of Dr. Sawyer's practice, but is instead a corporate-governing document. Indeed, while the Operating Agreement was amended and restated to account for the sale to SVMG, such agreement predated the sale, in which the previous version was dated May 7, 2006.

[39]     The relevant provision of the Operating Agreement, under Section 8.3, provides that, in the event of an Involuntary Withdrawal, the Member's interest shall be paid pursuant to the formula set forth in Section 8.4. At no point has Dr. Sawyer asserted that these provisions were not followed. As a practical matter, SVMG would assert that a termination of Dr. Sawyer's employment complied with the Employment Agreement, and such termination would trigger redemption of Dr. Sawyer's membership interest. It was up to Dr. Sawyer to challenge his termination in court and show that it did not comply with the Employment Agreement. We concluded above that the full benefit of Dr. Sawyer's membership interest was protected from being deprived by improper termination of his employment by the Joinder Agreement, observing that the Employment Agreement itself states that "as a continuing condition of employment *hereunder*," the Joinder Agreement remains in effect. Appellant's Appendix Volume 2 at 103 (emphasis added). The Operating Agreement, by

contrast, merely sets forth the formula for how to calculate the redemption payment in the event of an Involuntary Withdrawal.

[40] Dr. Sawyer seeks reversal of the court's partial summary judgment order in order to seek attorney fees under Section 8.8 of the Operating Agreement, which in relevant part allows any Member or the Hospital "to pursue any other available remedies in connection with a breach of this Agreement, including recovery of monetary damages, and shall in any event be entitled to recover from the non-prevailing party, reasonable attorneys' fees and costs incurred in the successful enforcement of the provisions of this Agreement." *Id.* at 136-137. Again, the relevant portion of the Operating Agreement provides the formula, agreed upon by the Members, for how to pay a Member who is the subject of an Involuntary Withdrawal. Dr. Sawyer does not challenge Brian Morris's calculation of the $196,787 redemption payment itself or the fact that such payment was made.[9] Consequently, we cannot say that the Hospital breached the Operating Agreement.

[41] In short, it is the Joinder Agreement and not the Operating Agreement that protected the benefit of Dr. Sawyer's bargain, which includes his right to profits in the form of investment income from his ten-unit membership interest in the Hospital. The Operating Agreement merely provides a method for calculating a payment that Dr. Sawyer, throughout the litigation and on appeal, maintains

---

[9] Indeed, to the extent Dr. Sawyer brings up the fact that the payment was not made within ninety days, the ninety-day timeframe for redemption is contained in the Joinder Agreement, not the Operating Agreement.

he should not have been paid. The trial court did not err in granting summary judgment as to the Operating Agreement.

## II.

[42] The next cross-appeal issue is whether the court abused its discretion in awarding attorney fees to Dr. Sawyer as a result of the Hospital's misconduct during discovery. The rules of discovery are designed to "allow a liberal discovery process, the purposes of which are to provide parties with information essential to litigation of the issues, to eliminate surprise, and to promote settlement." *Huber v. Montgomery Cnty. Sheriff*, 940 N.E.2d 1182, 1185 (Ind. Ct. App. 2010) (citing *Hatfield v. Edward J. DeBartolo Corp.*, 676 N.E.2d 395, 399 (Ind. Ct. App. 1997), *reh'g denied*, *trans. denied*). "Trial courts exercise 'broad discretion' in making discovery rulings." *International Business Machines Corp. v. ACS Human Servs., LLC*, 999 N.E.2d 880, 885 (Ind. Ct. App. 2013) (quoting *Vernon v. Kroger Co.*, 712 N.E.2d 976, 982 (Ind. 1999)), *trans. denied*. Thus, "an appellate court will interfere only when the appealing party can show an abuse of that discretion." *Id.* "Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case." *Id.* (quoting *Vernon*, 712 N.E.2d at 982 (quoting *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993))). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if it misinterprets the law. *Id.*

[43] "Because of the fact-sensitive nature of discovery issues, a trial court's ruling is given a strong presumption of correctness." *Id.* (quoting *Smith v. Smith*, 854 N.E.2d 1, 4 (Ind. Ct. App. 2006)). This presumption extends as well to the trial court's determinations with respect to violations of discovery orders and attendant sanctions, which should not be overturned "[a]bsent clear error and resulting prejudice." *Id.* (quoting *Smith*, 854 N.E.2d at 4 (citing, *inter alia*, *Vernon*, 712 N.E.2d at 982)); *see also Wright v. Miller*, 989 N.E.2d 324, 330 (Ind. 2013) ("We presume that the trial court will 'act in accord with what is fair and equitable in each case,' and thus we will only reverse 'if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law.'" (quoting *McCullough*, 605 N.E.2d at 180)). We are, as ever, mindful that "[t]he purpose of the discovery rules is to allow for minimal trial court involvement and to promote liberal discovery." *Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012). When we review for an abuse of discretion, we do not reweigh the evidence. *Brightpoint, Inc. v. Pedersen*, 930 N.E.2d 34, 38 (Ind. Ct. App. 2010), *trans. denied*.

[44] "While the discovery process is intended to require little, if any, supervision or assistance by the trial court, when the goals of this system break down, Indiana Trial Rule 37 provides the trial court with tools to enforce compliance." *Huber*, 940 N.E.2d at 1186 (citation and internal quotation marks omitted). Ind. Trial Rule 37(B)(2) allows for sanctions for the failure to comply with a discovery order. *IBM*, 999 N.E.2d at 891. "Such sanctions may include, for parties, orders that preclude the introduction of evidence or limit the presentation of

claims or defenses." *Id.* (citing T.R. 37(B)(2)(a)-(e)). In lieu of such procedural sanctions, "the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." *Id.* (citing T.R. 37(B)(2)). "The trial rules do not require the discovering party to have suffered substantial prejudice in order for sanctions to be assessed" and, indeed, "the language of Trial Rule 37 uses the word 'shall,' that is, the rule requires the trial court to assess sanctions for disobedience unless the defying party's disobedience was substantially justified or sanctions would otherwise be unjust." *Id.* at 892.

[45] Dr. Sawyer asserts that the Hospital "engaged in systematic and pervasive contempt of court through its discovery misconduct, doing as little as possible, as late as possible." Appellee's Brief at 32. He argues that this Court should reject the claim made in the response to his verified petition that the Hospital "never identified an iota of discovery [it] failed to produce" because "[t]he trial court already recognized [the Hospital's] discovery misconduct, and determined that an award of attorney fees and costs against [it] was appropriate." *Id.* at 33. He points to his motion to compel filed on August 9, 2013, which requested that the court direct the defendants to provide responses to certain interrogatories, and that it was the Hospital that objected to and refused to answer some of the interrogatories at issue. He contends that we should not be misled by the Hospital's tactic of creating twenty-two separate groups of fees

because the Hospital's "delay and contempt was systemic and pervasive." *Id.* at 34. Dr. Sawyer also argues that, "[a]t a bare minimum," we should award fees associated with pursuing the Motion to Compel, in which the Hospital's "arbitrary division of the time entries" agreed that he "incurred $17,193.00 attempting to resolve his discover [sic] disputes without involving the court,"[10] and "incurred $21,047.39 in presenting his Motion to Compel to the [c]ourt."[11] *Id.* at 34-35. He states that these fees are wholly separate from the $27,233.19 awarded by the court and asks this court to grant fees in the amount of $445,500, arriving at that amount by starting with $471,015.15, discounting approximately five percent, then discounting an additional five percent, and adding $18,000 "for fees incurred in pursuit of this Fee Petition." *Id.* at 35 n.7.

[46] The Hospital argues that "Dr. Sawyer asks this Court to reweigh a lengthy, complex discovery dispute involving primarily the Employer, who is not a party to the appeal," offering only "a sparse, six-paragraph argument with no citation of legal authority" or the relevant standard of review and that waiver applies. Appellant's Reply Brief at 36-37. It asserts a trial court's rulings are given a strong presumption of correctness, that an abuse of discretion standard applies, that this court recently declined to reweigh the evidence regarding attorney fees

---

[10] These fees are contained in the response's Appendix U, titled "Contested Fees Related to Discovery Disputes Prior to Judge McCarty's Order," containing fees associated with the "discovery dispute" for dates between December 7, 2012, and April 30, 2014. Appellee's Appendix Volume 9 at 76-79.

[11] These fees are contained in the response's Appendix V, titled "Contested Fees Related to Motions to Compel Prior to Judge McCarty's Order," containing fees associated with the "Motion to Compel" for dates between August 8, 2013, and March 19, 2014. Appellee's Appendix Volume 9 at 80-82

in *IBM*, 999 N.E.2d at 889, despite fully developed arguments in that case, and that Dr. Sawyer has not met his burden. It states that "Dr. Sawyer asks this reviewing Court to reweigh a complex discovery dispute that involves all Defendants, not just the Hospital, and for which the trial court awarded [him] a sanction of $27,233.19." *Id.* at 39. The Hospital also argues that it "did not agree" to fees incurred by Dr. Sawyer for pursuing his Motion to Compel, that Appendix U "merely represents a partial list of contested time entries" totaling $17,193, and that in fact in its response of May 17, 2016, the Hospital "specifically asserted that the fee petition as to [it] should be denied." *Id.* at 39 n.10.

[47]   Dr. Sawyer argues in his reply that if this Court agrees that it "cannot or should not 'reweigh a complex discovery dispute,'" as termed by the Hospital, it should direct the trial court to conduct a hearing for that purpose. Cross-Appellant's Reply Brief at 18. He states that the fact the Hospital does not refute its categorization of fees supports an additional award, including the $17,193 for attempting to resolve the discovery dispute without involving the court and the $21,047.39 incurred in presenting his Motion to Compel. It also states that the Hospital's argument is misleading in that, while it did not agree to pay such fees, it did not dispute that such fees were unearned, inaccurate, or incomplete. He suggests that the Hospital now attempts to "disavow its own classification of Dr. Sawyer's verified attorney fees . . . ." *Id.* at 19. He further argues that "[t]here is no language in the order, express or implied, that limits [his] fee recovery for [the Hospital's] discovery misconduct to only those fees

incurred after the order was entered." *Id.* at 20. He asks this court to remand with instructions to "either award all of [his] verified attorney fees, or to conduct a hearing to determine the appropriate award." *Id.* He also argues that he did not waive his claim, that Appellate Rule 46(A)(8)(b) applies to an appellant's brief and his is an appellee's brief filed under Rule 46(B), and that if it does apply it "was an inadvertent omission of information . . . both provided by [him] to the trial court and cited by [the Hospital] in Cross-Appellee's Response." *Id.* at 21.

[48] To the extent the Hospital asserts waiver due to the failure of Dr. Sawyer to recite the relevant standard of review or discuss relevant case law in his Cross-Appellant's Brief, we observe that a party risks waiver for failure to provide a statement of the standard of review or discuss relevant authority in its brief. *See Ramsey v. Review Bd. of Workforce Dev.*, 789 N.E.2d 486, 490 (Ind. Ct. App. 2003) (holding that the claimant's substantial noncompliance with rules of appellate procedure resulted in waiver of his claims on appeal); *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (holding argument waived for failure to cite authority or provide cogent argument), *reh'g denied*, *trans. denied*. However, whenever possible "'we prefer to resolve cases on the merits' instead of on procedural grounds like waiver." *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (quoting *Roberts v. Cmty. Hospitals of Ind., Inc.*, 897 N.E.2d 458, 469 (Ind. 2008)). We will address the merits of a party's claim unless we find "noncompliance with the rule sufficiently substantial to impede our consideration of the issue raised." *Id.* (quoting *Guardiola v. State*, 268 Ind. 404,

406, 375 N.E.2d 1105, 1107 (Ind. 1978)). Under these circumstances, including the otherwise-cogent argument provided by Dr. Sawyer, we elect to address his argument.

[49]    The record makes clear that counsel for the Hospital engaged in dilatory tactics during discovery that the trial court determined could only be rectified by the imposition of sanctions. Dr. Sawyer first raised problems with discovery about a year into the litigation, on August 9, 2013, when he filed a Motion to Compel Documents and Interrogatory Responses which alleged that defendants' counsel had stalled in providing complete responses to discovery requests for over eight months. The court ultimately agreed with Dr. Sawyer, issuing its Order granting Plaintiff's Motion to Compel Documents and Interrogatory Responses on October 8, 2014 ordering compliance within ten days. The court also awarded reasonable attorney fees associated with pursuing the motion and asked Dr. Sawyer's counsel to submit a bill of costs. Then, on October 21, 2014, Dr. Sawyer filed his Motion for Contempt Hearing and for new Deadline to Submit Bill of Costs and Response in Opposition to Motion for Extension of Time due to defendant counsel's failure to comply with the court's order.[12] On April 23, 2015, following a hearing, the court granted Dr. Sawyer's motion making a finding of contempt and stating that "[a]ny expenses, fees, or costs

---

[12] As observed by Dr. Sawyer in his brief, the Hospital, SVMG, and Dr. Hollon were represented by the same counsel in the proceedings before the trial court.

shall be determined when submitted by [Dr. Sawyer]." Appellee's Appendix Volume 7 at 77.

[50] Following the trial, Dr. Sawyer filed his Verified Petition for Damages "pursuant to the Court's October 8, 2014 *Order Granting Plaintiff's Motion to Compel Documents and Interrogatory Responses From Defendants*, and the Court's *Entry of April 23, 2015*" seeking damages in accordance with those orders. Appellee's Appendix Volume 8 at 140. In his petition, Dr. Sawyer submitted a calculation of relevant attorney fees totaling $471,025.15 and requested $450,000. SVMG, the Hospital, and Dr. Hollon filed their Defendants' Responses to Plaintiff's Verified Petition for Damages, in which the defendants grouped the bill of costs submitted by Dr. Sawyer into twenty-two different categories and agreed to certain fees, listed in the filing as Appendix A and totaling $27,233.19. The response also requested that the court deny Dr. Sawyer's fee petition as to the Hospital individually. On June 30, 2016, in a one-page order, the court in relevant part granted Dr. Sawyer's verified petition in the amount of $27,233.19, i.e., the amount identified by the Hospital's counsel as uncontested, without explanation.

[51] After a review of the record and the arguments of the parties, we find that the court abused its discretion in issuing its Entry of June 30, 2016, when it relied exclusively upon the Hospital's calculation. As Dr. Sawyer observes in his argument, we need not delve deep into the record to recognize that the award of $27,233.19 is inadequate and does not reflect the depth of the abuse of the discovery process exhibited by trial counsel for the Hospital, SVMG, and Dr.

Hollon. For example, we agree with Dr. Sawyer that there is no discernable reason the court did not award the fees listed in Appendix U, which is comprised of fees directly associated with the discovery dispute but were for services rendered prior to the court's October 8, 2014 Order, totaling $17,193.06. The court in its October 8, 2014 Order awarded to Dr. Sawyer "costs and reasonable attorney fees associated with *pursuing*" his motion to compel, which undeniably should include fees predating the order itself. Appellee's Appendix Volume 5 at 154 (emphasis added).

[52] The court's failure to award the fees the Hospital grouped into Appendix U is an example of fees to which Dr. Sawyer is entitled, and there may be others, including some or all of the fees listed in the Hospital's Appendix V chronicling fees associated with pursuing the Motion to Compel itself that were incurred prior to the court's order.[13] We reverse the court's Entry of June 30, 2016, and remand with instructions that the court review the fee listing submitted by Dr. Sawyer and issue an appropriate award for discovery sanctions following its

---

[13] The Hospital in its response to Dr. Sawyer's petition asserts that some of the fees listed in Appendix V include "time spent for discovery that was produced prior to the April 15 hearing and that is not subject to the Court's Order or Defendants' stipulation." Appellee's Appendix 9 at 12. The Hospital also made the claim that "[i]n fact, [Dr. Sawyer] did not identify any time related to a 'motion to compel' in his entries that came after October of 2014, and only a handful subsequent to Judge McCarty's Order." *Id.* at 12-13. It is unclear to this Court why the Hospital expected that Dr. Sawyer would incur attorney fees for work litigating a motion that the trial court had already ruled on.

rulings in the October 8, 2014 Order and the Entry of April 23, 2015. In rendering its order, the court shall also apportion the sanctions appropriately.[14]

## *Conclusion*

[53] For the foregoing reasons, we affirm the trial court's denial of the Hospital's motion to dismiss, its judgment entered against the Hospital, and its grant of partial summary judgment in favor of the Hospital, reverse the court's Entry of June 30, 2016 related to Dr. Sawyer's Verified Petition for Damages regarding attorney fees due pursuant to the discovery dispute, and remand for further proceedings consistent with this opinion.

[54] Affirmed in part, reversed in part, and remanded.

May, J., and Pyle, J., concur.

---

[14] To the extent that SVMG and Dr. Hollon are not involved in this appeal, we observe that Ind. Appellate Rule 17(A) states that "[a] party of record in the trial court . . . shall be a party on appeal."