## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2018, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Fred Weisheit
New Castle, Indiana

ATTORNEY FOR APPELLEE

Joel E. Harvey
Hayes Copenhaver Crider Harvey, LLP
New Castle, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Fred Weisheit,
*Appellant*,

v.

Triple J Plumbing LLC,
*Appellee*.

August 31, 2018

Court of Appeals Case No. 33A01-1709-SC-2098

Appeal from the Henry Circuit Court

The Honorable Bob A. Witham, Judge

Trial Court Cause No. 33C03-1606-SC-0462

**Brown, Judge.**

[1] Fred Weisheit, *pro se*, appeals the judgment of the small claims court against him. We affirm.

## *Procedural History*

[2] Triple J Plumbing, LLC ("Triple J") was hired by Progress Rail in 2014 in connection with a sewer project to separate the sanitary sewer from the storm water system in Muncie, Indiana. Triple J hired Weisheit d/b/a Fred's Excavating as a subcontractor to perform certain work related to the project for $51,078.14. In January 2015, Triple J paid Weisheit $43,078.14. Weisheit sent an invoice to Triple J dated July 30, 2015, in the amount of $20,613.55 which listed $8,000 for the balance on account and included interest and additional charges.[1] Counsel for Triple J sent a letter dated August 10, 2015, to Weisheit stating that Triple J had paid $43,087.14 and that $8,000 was withheld pending completion of the project; that Weisheit abandoned the project with the work not yet completed on July 23, 2015; that, after Weisheit left the project, Triple J discovered the sewer line he had installed was too high in areas and as a result 250 feet of pipe had to be reinstalled; that Triple J never agreed to pay the additional charges listed in Weisheit's invoice; that Triple J incurred expenses as a result of Weisheit's abandonment of the project prior to its completion; and that Triple J wished to resolve the matter amicably and was willing to allow

---

[1] The additional charges listed on Weisheit's invoice included, among other items, training of pipe layers in the amount of $500, excavator fees for forty hours due to training and delays in the amount of $8,000, and skid-steer fees for forty hours in the amount of $3,000.

Weisheit to perform the grading, backfill, asphalt repairs and other work within the original scope of the project work that remained to be completed.

[3] On June 22, 2016, Weisheit filed a Notice of Small Claim alleging that Triple J owed an outstanding balance to him. On July 13, 2016, Triple J filed a counterclaim against Weisheit.

[4] The small claims court held a trial over two days. Weisheit testified that he and Triple J entered into an agreement on a sewer separation project, most of the project was completed when he sent Triple J an invoice, Triple J did not pay the full invoice, that he understood "that some was being held back for retainage for the finish work," that he "completed the finish work up to a certain extent," and that he was told to leave the property. Transcript Volume II at 6. On cross-examination, when asked if he was responsible for ensuring the holes were dug to a proper elevation, Weisheit replied that he was never given the proper elevations on a blueprint. He indicated he was responsible for backfilling but not for the bedding of the pipe and that he performed all the work he was retained to perform except for grade work in one small area. The court asked if there was a written agreement between the parties, and Weisheit replied "[w]e did a lot it over text messages and just verbal over the phone." *Id*. at 9. Weisheit also presented the testimony of his employee Sam Banta, who agreed that Weisheit's scope of work included digging and backfilling only. When asked if Weisheit was required to do "anything pertaining to installation of the pipe or the elevation of the pipe," Banta answered: "No. We wasn't

supposed to. We did the jump down in the hole and helped them do it because they didn't know how to do it." *Id*. at 13.

[5] Triple J presented the testimony of Nathan Jones who testified that he worked for Progress Rail and that, on July 23, 2015, he was informed that Weisheit was not dressed properly in accordance with Progress Rail's safety rules, he went out and asked Weisheit if he had pants in his truck that he could wear, and Weisheit responded that he did not and that, if he had to leave to obtain pants, he was not coming back.

[6] Terrence Whitehead, the principal of Triple J, testified that he gave a depiction of the project area to Weisheit at some point which showed the existing manholes and combined sewer, the new lines to be installed, and an area that contained soil contaminants which would be addressed by another company. Whitehead testified that he and Weisheit visited the site before Triple J submitted a quote to Progress Rail, they knew the "elevations were very critical" as the line to be installed needed to slope downward very gradually as it extended away from the building, and they used a laser and "shot elevations together." *Id*. at 31. When asked to describe the specific work Weisheit was retained to perform, Whitehead explained that Weisheit was retained to excavate all soil, to provide shoring, to verify the trench was dug at the correct elevation and "his guy shot the elevation," to backfill the trench, to provide all asphalt patching and curb work where necessary, and to provide final grade and seeding. *Id*. at 32.

[7]  Whitehead testified that, on July 23, 2015, Weisheit was asked to leave the site because he was not wearing long pants as required, did not return to the site, and demanded payment. He indicated that, at that time, over a hundred feet of sewer line remained to be installed and asphalt needed to be patched. Whitehead indicated that he discovered defects in Weisheit's work, namely, that the trench line was approximately eighteen inches too high, which necessitated Triple J to "dig the pipe back up clear back to the manhole and re-core drill it and relay all the pipe." *Id*. at 48. Whitehead referenced photographs of the site, noted that one of the pipes should have been flowing into a manhole, and testified that Triple J had to re-core drill a hole through the manhole at the correct elevation, dig the ditch approximately twelve to eighteen inches deeper, and lower all of the piping. Whitehead testified that Triple J incurred costs as a result of Weisheit leaving the job site in the amount of $9,792.50 as itemized in an account detail introduced as Defendant's Exhibit 13. The account detail included itemized charges for equipment, labor to remove piping, install lines, backfill a trench, grade and seed, and legal fees. On cross-examination, Whitehead reiterated that Weisheit was responsible for "the shooting of the laser" and to "establish the bottom of the ditch." *Id*. at 55. The court asked Weisheit if he had any further testimony he wished to offer, and Weisheit stated that he was contracted to perform digging and backfilling, that Triple J was to install the pipe and the bedding of the pipe, and that he believed Whitehead was blaming him for the incorrect installation of the pipe when that was not part of his job.

On July 10, 2017, the court entered judgment in favor of Triple J in the amount of $6,000. Weisheit filed a motion to reconsider, which the court denied.

## *Discussion*

The issue is whether the judgment of the small claims court is clearly erroneous. Judgments in small claims actions are subject to review as prescribed by relevant Indiana rules and statutes. Ind. Small Claims Rule 11(A); *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013). In the appellate review of claims tried by the bench without a jury, the reviewing court shall not set aside the judgment unless clearly erroneous. *Eagle Aircraft*, 983 N.E.2d at 657. The appellate tribunal does not reweigh the evidence or determine the credibility of witnesses but considers only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Id*. This deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. *Id.* We presume that the court correctly applied the law. *Id.* However, this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction. *Id*. The court's findings control only as to the issues they cover and a general judgment controls as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.* Findings will be set aside only if

they are clearly erroneous. *Id.* In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.*

[10] The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties, and whether a contract exists is a question of law. *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 812-813 (Ind. 2009). All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required. *Id.* at 813. *See also McLinden v. Coco*, 765 N.E.2d 606, 612 (Ind. Ct. App. 2002) (noting the interrelated ideas of intent to be bound and definiteness of terms). When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. *Jernas v. Gumz*, 53 N.E.3d 434, 444 (Ind. Ct. App. 2016), *trans. denied*. Rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable expectations, and when the interpretation requires extrinsic evidence, its construction is a matter for the fact-finder. *Id.* at 444-445; *see also McDivitt v. McDivitt*, 42 N.E.3d 115, 117 (Ind. Ct. App. 2015) (when a contract is ambiguous, extrinsic evidence may be examined to determine the parties' reasonable expectations), *trans. denied*.

[11] Weisheit states Triple J "was to install all plumbing lines, including bedding of the pipe, making all connections of the pipe and invert elevations of the pipe to connect to existing pipes." Appellant's Brief at 4. He argues an issue with the installation of the pipe was discovered while he was not present, that he was

forced to leave the premises on July 23, 2015, which terminated his agreement with Triple J, and that, upon receipt of his invoice for the balance owed, Triple J made accusations that the pipes were installed incorrectly although that was not a part of the scope of his work.[2]

[12] Triple J responds that, at the time Weisheit abandoned the project, his work was not complete and that it incurred additional labor and material costs of $9,792.50 in completing the work which Weisheit failed to perform and in correcting the deficiencies in his work. Triple J maintains the judgment is supported by the evidence and that Weisheit's arguments are nothing more than a request to reweigh the evidence and to draw different conclusions than the small claims court.

[13] The record reveals Weisheit agreed to perform certain work in connection with the sewer separation project. Weisheit does not argue that he did not intend to be bound or that the agreement was too indefinite to be enforced. Triple J presented testimony that, before it submitted any bid or proposal to Progress Rail, Whitehead and Weisheit visited the project area together and "shot elevations together." Transcript Volume II at 31. The parties introduced

---

[2] Weisheit also argues that Triple J's invoice was fabricated, noting that a date of August 10, 2015, appears at the top of the invoice while the descriptions referenced work completed between July 23 and August 20, 2015. The document referenced by Weisheit is labeled "Account details" and "Bill #1541," identifies Weisheit, and includes, in four unlabeled fields at the top of the page, the text "Net 30," "12/11/2014," "08/10/2015," and "1541." Defendant's Exhibit 13. The itemized descriptions include entries for a labor charge for removing two hundred fifty feet of pipe on July 24, 2015, labor and equipment charges on July 27 through July 30, 2015, and grading and seeding on August 20, 2015. The itemized descriptions are not inconsistent with Whitehead's testimony.

depictions of the project area showing the location of the sewer lines, manholes, asphalt, and area checked for soil contamination. Both Whitehead and Weisheit presented testimony regarding the specific work Weisheit was retained to perform. To the extent the parties presented conflicting testimony as to the party responsible for the proper and relative elevation of the piping, depth of the excavation, or location of the holes drilled in or connections to the manholes, the small claims court was able to consider the exhibits and extensive testimony and find the evidence presented by Triple J to be persuasive. Based upon the evidence which supports the judgment, and given our deferential standard of review, we conclude that the small claims court's judgment in favor of Triple J and against Weisheit is not clearly erroneous.

[14] For the foregoing reasons, we affirm the judgment of the small claims court.

[15] Affirmed.

Altice, J., and Tavitas, J., concur.